# The Philadelphia Association for the Relief of Disabled Firemen *versus* Wood.

*Constitutional Law.—Right of Taxation as applied to Agencies of Foreign Insurance Companies.— Taxation defined. — Constitutionality of Act of May 7th 1857, relative to Contribution for support of Disabled Firemen.*

1. A tax law is a legislative enactment which defines the measure of every man's duty in support of the public burdens, and provides the means of enforcing it. But a requisition or decree that one class of men shall pay a portion of their earnings to another, no matter how benevolent or worthy, is not taxation, nor even legislation, such as this court will enforce.

2. The Act of Assembly of May 7th 1857, imposing on the agencies of foreign insurance companies in the city of Philadelphia the duty of paying two per cent. on all their receipts to the Philadelphia Association for the Relief of Disabled Firemen, is so extraordinary in its character, of such very doubtful constitutional validity, so dangerous in its tendency as a precedent, and so unusual in respect to the form prescribed for the enforcement of its terms, that the judiciary will not enforce the bonds given by such agencies, for the payment of the said per centum on their premiums, to the said association.

ERROR to the District Court of *Philadelphia.*

This was an action brought in the District Court, to December Term 1859, by The Philadelphia Association for the Relief of Disabled Firemen, against George Wood, who was sued with James H. Montgomery and Joshua P. Ash, and in which the following facts were agreed upon as a case stated for the opinion of the court, with leave to turn the same into a special verdict.

The plaintiffs are an incorporation, created by Act of Assembly of this state, of 25th March 1835 (P. L. 85), for the purpose of relieving disabled firemen, their widows and orphans, and persons sustaining injury by fire apparatus. They are entitled to receive and hold lands and chattels of every kind and quality, provided the yearly profits of their real estate shall not exceed six thousand dollars.

By Act of 9th April 1856 (P. L. 284), entitled " An Act relative to Agencies of Foreign Insurance, Trust, and Annuity Companies," insurance companies, incorporated by other states or foreign governments, desiring to transact business in this state,

[Philadelphia Association, &c. *v.* Wood.]

are entitled to do so, upon depositing with the auditor-general certain statements of their condition, and complying with certain other conditions, and paying for transacting business in the city of Philadelphia, the sum of two hundred dollars ; upon doing which, a license shall be granted to them, for carrying on such business for the period of one year from the date of granting such license.

The Royal Insurance Company of Liverpool is an association of individuals, not incorporated by the laws of this state, doing business as a fire insurance company, in the city of Philadelphia, having an agency established in said city,—the defendant, George Wood, being their agent.

On the 28th January 1857, the said The Royal Insurance Company of Liverpool, having in other respects complied with the provisions of the Act of 9th April 1856, paid to the treasurer of this state, for the use of the Commonwealth, the sum of two hundred dollars, as required by the said act, and received, in accordance with its provisions, from the auditor-general, a license to carry on their said business by their agent, the said defendant, for the period of one year from the date of the granting of such license.

By an Act of Assembly, passed the 7th May 1857, relative to agencies of foreign insurance and trust and annuity companies in the city of Philadelphia (P. L. p. 423), it is enacted, among other things, that there shall be paid to the treasurer of the Philadelphia Association for the Relief of Disabled Firemen, for the use of said association, on the first day of February in each year, by every person who shall act, in the city of Philadelphia, as agent of any association of individuals, not incorporated by the laws of this state, to effect insurances against losses by fire, in the city of Philadelphia, the sum of two dollars upon the one hundred dollars, and at that rate upon the amount of all premiums which, during the year or part of a year, ending the next preceding first day of September, shall have been received by such agent, or by any person for him, for any insurance effected, or agreed to be, against loss or injury by fire, in the city and county of Philadelphia; and every such agent shall execute and deliver to the said treasurer, a bond to the Philadelphia Association for the Relief of Disabled Firemen, in the penal sum of one thousand dollars, with sureties, conditioned that he will annually render to said treasurer, on the first day of February in each year, a true account, verified by oath, of all premiums which, during the year ending on the first day of September preceding such report, shall have been received by or for him as aforesaid; and he will annually, on the first day of February in each year, pay to said treasurer, two dollars upon every hundred, and at that rate upon the amount of any premiums so received;

and all previous laws inconsistent with the said act, were thereby repealed.

On the 12th May 1857, a supplement to the Act of 9th April 1856 (P. L. 458) was passed, embracing within its provisions all foreign associations, companies and individuals, formed or established for insuring fire, marine, or life risks, &c., whether established on the stock or mutual principle, and dispensing with certain previous formal requirements.

On the 10th July 1857, the defendant, George Wood, agent of the Royal Insurance Company of Liverpool, with the defendants, James H. Montgomery and Joshua P. Ash, executed and delivered a bond to the plaintiffs, in the sum of one thousand dollars, reciting the Act of Assembly, before mentioned, of 7th May 1857, and conditioned that if the said Royal Insurance Company of Liverpool, and the said George Wood, their agent, should truly perform everything for securing performance whereof bond was by the said act required to be given, and of which performance might lawfully be required or requirable under said act, then the said obligation should be void, or else remain in full force.

On the 28th January 1858, the said Royal Insurance Company of Liverpool, having previously applied in writing, and in other respects complied with the provisions of the Act of 9th April 1856, paid to the treasurer of this state, for the use of the Commonwealth, the further sum of two hundred dollars, as thereby required, and received, in accordance with its provisions, from the auditor-general, a license to carry on their said business, by their said agent, for the period of one year from the date of granting of such license.

On the 28th January 1859, the said The Royal Insurance Company of Liverpool, having in other respects complied with the provisions of the Act of 9th April 1856, paid to the treasurer of this state, for the use of the Commonwealth, the further sum of two hundred dollars, as thereby required, and received, in accordance with its provisions, from the auditor-general, a license to carry on their said business, by their said agent, for the period of one year from the date of granting such license.

The said defendant, George Wood, has rendered accounts in writing, from time to time, verified by affidavit, that the amount of premiums for fire insurances, in the city of Philadelphia, taken by him, as agent of the said Royal Insurance Company of Liverpool, are as follows, respectively:

From the 7th of May 1857, to the 1st of September 1857,  .   .   .   .   .   .   .   $22,98.794

From the 1st of September 1857, to the 1st of September 1858,  .   .   .   .   .   .   .   $73,652.59

Of which amount of $73,652.59, the sum of $29,651.48 was

[Philadelphia Association, &c. *v.* Wood.]

received prior to the 28th January 1858, during the year of the first-mentioned license, and the balance of 44,001.11 was received subsequently to the 28th of January 1858.

From the 1st of September 1858, to the 1st of
September 1859, . . . . . . . . $75,993.96

Which amounts are admitted to be correct.

No percentage upon the amount of premiums so received by the said Royal Insurance Company of Liverpool, and no part or sum of said moneys so received as premiums, respectively, has ever been paid by the said George Wood, agent, or by any other person on behalf of the said The Royal Insurance Company of Liverpool, to the plaintiffs; or to their treasurer or any person. on their behalf.

The suit was brought, by the said plaintiffs, against the defendant George Wood, and the said Ash and Montgomery, of whom only the said Wood was served with process, in which the plaintiffs declared upon the said bond to recover the penalty thereof.

If, upon the whole case, the court shall be of opinion that the plaintiffs are entitled to recover, then judgment is to be entered in their favour, against the said George Wood, in the sum of one thousand dollars, with costs; but if the court shall be of opinion that the plaintiffs are not entitled to recover, then judgment is to be entered in favour of the defendant, George Wood, with costs. Either party shall have the right to take a writ of error to the judgment of the District Court; and all Acts of Assembly, deeds and papers mentioned in the case, may be referred to upon the argument, as if set forth at length.

It was contended, by the defendant, that the said Act of Assembly of 9th April 1856, and the supplements thereto, and the acceptance of the same by the taking out of the said several licenses from, and the payment of the said several sums of money by the defendant, to the state, constituted a contract by the state with the said The Royal Insurance Company, and with the defendant; and that the Act of 7th May 1857, and its supplements, so far as it requires a payment by the defendant George Wood, as agent of The Royal Insurance Company, to the plaintiffs, of the sum of two per cent. on premiums received by The Royal Insurance Company during the times herein specified, violates the said contract, and is repugnant to the first clause of the 10th section and 1st article of the Constitution of the United States, and also to the second clause of the 4th article of the same.

The plaintiffs contended that the said Acts of Assembly above referred to, did not constitute a contract by the state with the said The Royal Insurance Company, or with the defendant; and that neither the said Act of Assembly of 7th May 1857, nor its supplements, nor any part thereof, violate the respective pro-

visions of the Constitution of the United States, as alleged by the defendant.

The court below entered judgment in favour of the plaintiff for $1000, whereupon the defendant sued out this writ, and assigned for error the entry of judgment by the District Court on the case stated.

*Morton P. Henry*, for plaintiff in error.—The true construction of the Act of 12th May 1857 is, that it does not apply to companies or associations which had taken out licenses under the Act of 1856, prior to the passage of the act, because,

I. If the Act of 1857 is held to apply to such previously established agencies, an unconstitutional intention must be imputed to the legislature of the state ; as its terms would require the payment of the additional two per cent. on all premiums received after May 12th 1857, during the year of existing licenses. This construction is proper under the rule which requires such a construction as will violate no principle of natural equity, or constitutional provision : Commonwealth *v.* McCloskey, 2 Rawle 369.

The Royal Insurance Company had, at the time of the passage of the Act of 1857, a license for one year, from January 28th 1857, which constituted a contract by the state with the company and its agent : Gordon *v.* The Appeal Tax Court, 3 How. 153 ; The Piqua Bank *v.* Knoop, 16 Id. 369 ; Dodge *v.* Wolsey, 18 Id. 331.

The Act of 1857, if held to apply to agencies previously established, violated the obligation of the contract of the state under those licenses, by imposing additional burdens : Winter *v.* Jones, 10 Geo. 190. Beside this, the Act of 1856 provides for a renewal of licenses granted under that act. The companies and associations embraced under the provisions of this act, are such as establish branch offices or agencies ; it does not apply to mere transient agents for receiving applications for risks : Thornton *v.* The Western Reserve Farmers' Insurance Co., 7 Casey 529.

The nature of such an agency or establishment requires an organization, and an expenditure of capital and labour, by the companies accepting its provisions ; and although the Act of 1856 may not constitute a contract by the state, to grant such a renewal, yet, the injustice of supposing the state intended, within one year after the establishment of an agency under the invitation contained in the Act of 1856, to add a tax as onerous as that imposed by the Act of 1857, is so manifest, as to require express words to justify a court in making such a construction.

If applied to companies which establish agencies after the passage of the Act of 1857, it violates neither the constitutional provision against impairing the obligation of contracts, nor any

[Philadelphia Association, &c. v. Wood.]

natural sense of justice.   See Norman *v.* Heist, 5 W. & S. 171;
The Commonwealth *v.* McCloskey, 2 Rawle 369; 1 Bl. Com. 91.

II. The Act of 1857 is unconstitutional and void, because it
is an attempt to take the property of one set of individuals, and
transfer it to another, without compensation.   It is in violation
of Art. VII. sec. 4, and Art. IX. sec. 9 and 10 of the Constitution:
See Norman *v.* Heist, 5 W. S. 171; Brown *v.* Hummel, 6 Barr,
86; McMasters *v.* The Commonwealth, 3 Watts 292; Calder *v.*
Bull, 3 Dall. 386; Williamson *v.* Leland, 2 Peters 658; Sharp-
less *v.* The Mayor of Philadelphia, 9 Harris 147.

This Act of 1857 does not pretend to be a tax.   It is a gratu-
ity given by the legislature to The Society for the Relief of
Disabled Firemen, out of premiums received by The Royal In-
surance Company, on fire risks in the city of Philadelphia.

A tax is defined to be a burden or charge upon person or
property, to raise money for public purposes: In the matter of
the Mayor of New York, 11 Johns. R. 77, 80; The People *v.*
The Mayor of Brooklyn, 4 Comst. 419: Sharpless *v.* The City
of Philadelphia, 9 Harris 147.

The state can delegate the taxing power to local corporations,
for local purposes; but it must be for a purpose in which the
community taxed has an interest: Talbot *v.* Dent, 9 B. Monroe
508.   See also Cheany *v.* Hoover, Ibid. 345; Vanch *v.* Smith,
5 Paige, Ch. R. 159; see McMasters *v.* The Commonwealth, 3
Watts 292; Stetson *v.* Kempton, 13 Mass. 272; 2 Shepley 373.
These authorities show that the purposes of taxation must be for sub-
jects of public interest.

The plaintiffs below are a private corporation, in no way con-
nected with any department of the government: Angell & Ames
on Corporations, § 14.

The view taken by the court below, that The Royal Insurance
Company had no property in their future premiums, it is respect-
fully submitted, cannot be sustained.   It is a tax on business or
occupation:   Biddle *v.* The Commonwealth, 13 S. & R. 405.

The premiums to be received by the company are as much a
part of the product of their capital, and therefore to be treated
as property, as the interest on their investments.   It is not
admitted by the case stated, that the plaintiffs in error are a
foreign corporation.   The case admits them to be an " association
of individuals, not incorporated by the laws of this state."   The
words are taken from the Act of 1857.   No intendment that the
plaintiffs in error are a corporation, is to be made from the use
of a corporate name: Williams *v.* The Bank of Michigan, 7 Wend.
546: See also, Welland Canal Company *v.* Hathaway, 8 Id. 48.

The supplement to the Act of 11th April, passed the 12th May
1857, embraces within the provisions of the former act " all for-
eign associations, companies, firms, individuals, or copartnerships

[Philadelphia Association, &c. v. Wood.]

entered into, formed, or established, for insuring fire, marine, inland, or life risks."

The question, therefore, raised by the court below, as to the right to admit foreign corporations upon terms, does not arise See also the opinion of Black, C. J., in Sharpless v. The Mayor.

*John Hamilton, Jr.*, and *G. W. Biddle*, for defendants in error.—There was no contract with the insurance company which the Act of 7th May 1857 infringed. The company took a new license on the 28th January 1858, and again on the 28th January 1859, and, therefore, what is said on this point has no application. If the granting of the license constituted a contract, there was a new contract entered into by the Commonwealth each time of the issue and receipt of the license.

The plaintiff in error, however, contends that the *property* of the insurance company was *taken* for private use, in violation of the provisions of the state constitution.

The direction to pay to the Association for the Relief of Disabled Firemen a percentage of their future premiums, was not a taking of the property of the insurance company, but a lawful diversion of a tax on its way to the public treasury, into the hands of a charitable corporation. The insurance company was in no wise injured by this course; nor, if there was an illegal drawing of money from the public treasury, does it lie in this company's mouth to object to it, when its agent is sued for a non-compliance with his bond. None of the authorities cited by the plaintiff in error resemble or have direct application to the case in hand. They announce general constitutional principles, the value of which no one is disposed to question, but do not touch the present case. We have, however, the judgment of a highly respectable court of another state, sustaining the decision of the District Court; and as the subject is discussed in all its bearings in this case, it would be superfluous to do more than refer to it. In The Fire Department v. Noble, 3 E. D. Smith's (N. Y. C. P.) Rep. 440, it is held that a tax like the present one may be levied for the benefit of the Fire Department of the City of New York, and be made payable directly to the persons having the direction thereof. See, also, The Fire Department v. Wright, 3 E. D. Smith 453.

The opinion of the court was delivered, May 6th 1861, by

LOWRIE, C. J.—In April 1856, the legislature regulated the terms on which agencies of insurance companies incorporated by other states or foreign governments might transact their business within this state, and imposed an annual license fee of $200 on such as should be established in Philadelphia. In January 1857, the Royal Insurance Company of Liverpool conformed to the

[Philadelphia Association, &c. *v.* Wood.]

terms of the law, paid the license fee, and commenced business
there. In May 1857, a law was passed imposing on all such
agencies in Philadelphia the duty of paying two per cent. on all
their receipts to the Philadelphia Association for the Relief of
Disabled Firemen, and requiring the payment thereof to be se-
cured by bond, with a special and appropriate condition, and
with proper sureties. In July 1857, the defendant, as agent of
the Royal Insurance Company, gave a bond with sureties, not
exactly with the condition required by the law, but generally for the
performance of everything required of him by the Relief Associ-
ation under the law. He is now sued on this bond, his sureties
not being served with process, and defends on the ground that
the law is ineffectual and unconstitutional, as a means of impos-
ing this duty upon him, and that the bond is void.

We notice that the legislature does not call this burden upon
the agencies of foreign insurance companies a tax, and we think
it cannot properly be so called. Nor is it called a condition on
which such agencies are to be allowed, and it is not a condition,
for it is totally independent of the license and by a different Act
of Assembly; the license is complete without the law imposing
this burden. It is simply the creation of a relation or duty
that had before no existence, and not the regulation of an exist-
ing one.

Such legislation is manifestly very extraordinary, and it is well
to study all its peculiarities, in order that we may the better esti-
mate its soundness.

It is a burden imposed upon agents of companies not incor-
porated by our state. It is therefore intended to distinguish be-
tween our own corporations and those of other people, so as to
impose heavier burdens on the latter than on the former. So far
as this relates to corporations created by our sister states, it has
often been doubted by our most eminent jurists and statesmen
whether this is not forbidden by the nature and spirit of our
Federal Union, and by the Federal Constitution, 4, 2, 1, which
declares that "the citizens of each state shall be entitled to all
the privileges and immunities of citizens in the several states."
We do not undertake to decide this question now, but to show
how doubtful is the constitutionality of such distinctions, we refer
to many able opinions on the question published in connection
with the cases of The Fire Department of New York *v.* Noble and
Wright, 3 E. D. Smith's Rep. 440, 453.

Such legislation seems hardly consistent with the usual comity
or political generosity which we exercise in our relations with
the citizens of sister states, or even with those of stranger states.
We allow aliens, even those who have no intention to take a per-
manent residence here, to carry on among us every sort of law-
ful business on the same terms as our own citizens. This would

seem to be a necessary result of that fraternal generosity which each state of the Union owes to every other state.   No one ought to insist on that Utopian and impracticable cosmopolitism that would, in all cases, put the citizens of foreign states on an entire equality with our brethren.

All will admit that our government ought to regulate the terms on which insurance companies of sister states may do business here; because this may be necessary for the security of our citizens dealing with them.   And it is quite as clear that these companies ought to be taxed on their business here for the support of the public burdens.

We admit also that the protection against unequal treatment in taxation, which is afforded by the principle of international or interstate comity, is no exclusion of ungenerous legislation, but only a motive for abstinence from it.   That motive ought to be much more powerful against legislation like this, which contains, not a mere interstate distinction, but a distinction within the state: for it imposes burdens upon agents doing business in Philadelphia, and not upon those doing the same business in other parts of the state; and upon one class of business without any like burden upon any other class.   Yet, if this is taxation, we do not see how we can pronounce it unconstitutional, merely on the ground of inequality; for this is unavoidable; approximate equality is all that is to be expected; and classification is unavoidable, for different subjects of taxation must be reached in different forms.   But it becomes very dangerous to the principle of equality, and may become very tyrannical, when very small classes, which enjoy but little of the support of public sympathy, are selected out as special subjects of taxation.

The objection to this kind of legislation is much more serious— that the Act of 1857 simply and arbitrarily imposes upon the agents of foreign insurance companies the duty of paying two per cent. of the premiums received by them to a private corporation in Philadelphia.

Of course there was a good motive for this.   The relief of disabled firemen is a purpose worthy of society.   And firemen contribute much to save insurance companies from losses.   And hence it is inferred that insurance companies ought to contribute to the support of those who have been disabled in working for their benefit.   But the same argument might be quite as effectually used as a reason for imposing a burden in favour of this society, upon those who obtain insurances, and much more so upon those who do not insure at all.   Therefore, since the chief characteristic of justice is its equality, the justice of this provision is very far from being apparent.   An untrained and unthoughtful benevolence is very apt to be unjust to those interests which do not attract its special attention.

3 Wr.—6

[Philadelphia Association, &c. *v.* Wood.]

This is an association for charitable purposes, it is true, but still it is strictly a private corporation. No public officer has any official knowledge of its existence, or of its members, organization, or acts. It renders no account of its proceedings or of its funds. It is a close corporation, fixing its own terms of membership, and changing *its organization but not its object, as it* pleases. The imposition upon the defendant below, or on his principals, of the duty of contributing to its support, is therefore simply taking one man's property and giving it to another. It is depriving a man of his property without due process of law, even when it is sought to be done through the instrumentality of the courts, for the legislature cannot require one man to give his money to another, and then give him an action to enforce their will, and expect this to be treated as a remedy by due course of law.

If the legislature may command such a contribution as this, we are unable to see why they may not command every citizen to contribute not only to this association, but to every charitable association; and indeed, to every man who spends his time and means in a charitable way. There are associations for all sorts of charity; why may not the legislature require us all to contribute to them all, if they may require this class of people to contribute to this one? We cannot answer this question.

We have said this is not a tax. It does not profess to be. It has none of the forms of taxation in the mode of its collection. And if it were called a tax, it could not be one; for a name arbitrarily given cannot change its nature. A tax is an imposition for the supply of the public treasury, and not for the supply of individuals or private corporations, however benevolent they may be.

It is the legislative power that is vested in the legislature, and of course this includes tax legislation; and this means the making of laws that are to furnish the measure of every man's duty in support of the public burdens, and the means of enforcing it. Certainly it is not plain that, in either form or substance, this is tax legislation. If it is a mere requisition that one class of men shall pay their money to another class, it is no legislation at all.

The old monopolies which played so important a part under some English monarchs, and in the development of English liberty, were professedly grants to meritorious public servants (though often they were only favourites), of the exclusive right to trade in, or to import certain kinds of merchandise; and this of course gave them the profits of such trade, and a large control over every one who needed the given class of articles. Of course it was said that, if people desired to prevent such profits, they could abstain from the use of the articles; as it is said here, if

[Philadelphia Association, &c. v. Wood.]

these agencies will not bear the imposition, they can abandon the business. But this answer was not satisfactory then, and cannot be now, for the simple reason that in neither case is it for the support of the public burdens, but for private account.

If great public service, or great expectation of public service, charitable or otherwise, is to be the ground for justifying such grants, we know not why they should not be much more liberal towards firemen than this; for they are continually rendering good service to the people. It is, perhaps, a little more important, to know and to notice that they are a body of great influence, and are thus likely to be favourites of those in power, and to have the rights of others overlooked when it is important to please them. They may come to think hereafter, if this grant be admitted to be reasonable, that it is quite as reasonable that they should have a grant of two or of twenty per cent. of the rents of all the houses in the vicinity of their respective engine-houses, on account of the protection they give them. Now-a-days, when it has come to be considered that the ancient and valued right of petition is fast giving away to the influence of paid borers and of private solicitation, when the public voice is so little heard in legislative halls, and so seldom expressed in legislation, and when legislative time and talents are invoked much more for special schemes, and by the private calendar, than for measures of general welfare; it becomes very important to watch such grants as this. There are very many such bodies as the firemen, which, if they choose to exert their influence, will find themselves able to control their immediate representatives, even to the detriment of the public interests, and against any supposable public will.

We have said that this imposition is not a condition of a grant to the agencies of the right to engage in the insurance business. They needed no such grant. There is a probibition until certain terms are complied with, and then the license is granted. This imposition is entirely independent of all that, and has nothing in its form or nature that likens it to a condition either precedent or subsequent. It is simply a decree that one class of men shall pay to others a share of the profits of their business.

True, the legislature might have imposed an equivalent tax on the business, and, when paid into the public treasury, might have appropriated it to this association. But would the legislature make such an appropriation of public funds? In this case, it is quite apparent that the form of the proceeding belongs to the very essence of the provision made for the public safety. The imposition on this agency amounts now, at two per cent., to $1500 a year, and ten such agencies would give the association $15,000 a year. It is certain it could have got nothing like this in the annual appropriation bill. We are quite sure that no

such bounty was intended when the law was passed; for the bond .to be given to secure the payment, and which may be the only security for many years, is in the penal sum of only $1000.

And finally, if this imposition may be properly called a tax, then we seriously deny the authority of the legislature to impose upon the courts the duties of the tax collectors, and especially so when the tax is for private account, and not for the public treasury. When they do so, this court or any other may reject the function, whether it comes up by action merely on the duty imposed, or on a bond given to secure the duty. The courts are not to be tax collectors in any form, except as a consequence of some dispute arising in the process of collection, where judicial intervention becomes necessary, or as a means of enforcing official duty; or where the ordinary means of collection have failed. Even if the ordinary municipal liens for paving, &c., are taxes, the courts have nothing to do with them, though entered on their records, except to oversee the enforcement of the lien if any dispute arise.

Considering, then, that this imposition is so extraordinary in its character, of such very doubtful constitutional validity, so dangerous in its tendency as a precedent, and so unusual in the form of its enforcement, we must most respecfully decline, for the judiciary department of the government, the enforcement of the bond given to secure its payment.

> Judgment reversed, and judgment for the defendant below, with costs, and record remitted.