Firemen's Relief Association *v.* Scranton, Appellant.

*Municipalities—Appropriations of money—Firemen's relief association—Constitutional law—Repeal of ordinance—Mandamus.*

The Act of June 28, 1895, P. L. 408, which appropriates to municipalities within the commonwealth one-half of the net amount received from the tax paid upon premiums by foreign insurance companies, does not appropriate the fund to any particular purpose. It may be used in the discretion of the local authorities for any lawful purpose.

An ordinance of a city appropriating money received from the state under the above act of assembly, to a firemen's relief association, does not create in the association any vested right in the fund prior to its actual payment. It constitutes at most merely an executory gift, subject to revocation, until the transfer of the money has actually been made.

Argued Feb. 25, 1907. Appeal, No. 279, Jan. T., 1906, by defendant, from judgment of C. P. Lackawanna Co., May Term, 1905, No. 778, for plaintiff on demurrer to statement in case of Firemen's Relief Association v. City of Scranton. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Assumpsit to recover moneys alleged to be due under an ordinance.

NEWCOMB, J., found the facts to be as follows:

This action is assumpsit. The defendant has demurred to a statement disclosing the following facts:

1. By the Act of June 28, 1895, P. L. 408, a tax was imposed upon the business done in this state by foreign fire insurance companies, of which one-half the net amount was directed to be paid over by the state to the treasurers of the several cities and boroughs in proportion to the amount of tax derived

from each as shown by the annual reports of the insurance commissioner.

2. By ordinance approved March 17, 1898, entitled, "An ordinance to provide for the annual transfer of a certain fund received from the State treasury as revenue from the foreign insurance companies agreeably to an Act of Assembly approved June 28, 1895, to the Scranton Firemen's Relief Association," it was enacted:

"Sec. 1. Be it ordained, etc., that all such sums of money as may be received by the City Treasurer in accordance with the Act of Assembly, approved June 28, 1895, be, and is hereby declared to be received for the benefit of the Scranton Firemen's Relief Association.

"Sec. 2. That the City Treasurer is hereby directed to enter such sum on the receipt thereof, under a special account and to report the said amount annually to the City Clerk, who is hereby directed to issue warrants therefor in favor of the Treasurer of the Scranton Firemen's Relief Association immediately after the receipt thereof and on report to him of the City Treasurer."

3. June 6, 1898, the Scranton Firemen's Relief Association was incorporated by decree of this court. Its articles of association bear date of April 1, 1898, and it nowhere affirmatively appears that it had any actual existence prior to that date, and, therefore, when the ordinance was passed. Its purpose, as stated in the charter, is "to provide for the maintenance of a society for beneficial or protective purposes to the members from funds collected therein." Its qualification for membership is not defined by the charter, but section 3 of the by-laws provides that "the requisite qualifications for membership are that the beneficiary shall be or have been an active member of the Fire Department of the City of Scranton, and a citizen of the Commonwealth of Pennsylvania."

4. By section 2 of its by-laws the object of the association is stated to be "the accumulation of a fund from the annual dues of its members, legacies, bequests, gifts and other sources for the purpose of relieving firemen who may be disabled through accident while in the performance of their duties as active firemen of the City of Scranton, and in case of death for the benefit of a member's widow, orphans or estate."

5. At the time the ordinance was passed, and until 1901, Scranton was a city of the third class, but whether its fire department was a voluntary or paid organization does not appear.

6. In pursuance of the ordinance the receipts from the tax in question for the years 1896 to 1899, inclusive, were paid over by the city to the plaintiff. After that date the treasurer refused to make report of the fund to the clerk, and pending mandamus proceedings to compel him to do so the ordinance was repealed by another, approved October 24, 1903. The fund in dispute, therefore, is the amount of receipts from the tax for the years 1900 to 1902, inclusive, still in the city treasury, as follows:

| | |
|---|---:|
| For the year 1900 . . . . . . | $2,579.37 |
| For the year 1901 . . . . . . | 3,023.67 |
| For the year 1902. . . . . . | 3,245.72 |
| Total . . . . . . | $8,848.76 |

Which the plaintiff claims, with interest on the several sums from the date when they respectively came to the hands of the city treasurer. These dates, however, do not definitely appear.

The demurrer was argued upon the assumption that the plaintiff corporation had an associate existence under its present name prior to the passage of the ordinance under which its claim is made. While it is doubtful practice to supply such fact in that way we will in this instance assume it as counsel have done, and suggest that the statement be amended in that particular by agreement.

The court entered judgment for plaintiff for $10,180.86. Defendant appealed.

*Error assigned* was the judgment of the court.

*David J. Davis*, city solicitor, with him *H. R. Van Deusen*, assistant city solicitor, for appellant.—The court erred in entering judgment for plaintiff: Com. v. Pittsburg, 183 Pa. 202; Speer v. School Directors, etc., 50 Pa. 150; Wilkes-Barre City Hospital v. Luzerne County, 84 Pa. 55; Taylor v. Mott, 123 Cal. 497 (56 Pac. Repr. 256); Erie's App., 91 Pa. 398; Wade

v. Oakmont Boro., 165 Pa. 479; Black v. Chester City, 175 Pa. 101.

A. A. *Vosburg*, with him *Charles W. Dawson*, for appellee. —The ordinance of 1897 made a valid appropriation of all moneys derived from the state under the provisions of the act of 1895, not only of such money then in the treasurer's hands, but as to that subsequently paid in; and it was not necessary or proper to make an appropriation of this money yearly, in the annual appropriation ordinance : Ristine v. State, 20 Ind. 328 ; People ex rel. McCauley v. Brooks, 16 Cal. 11; Black v. Chester City, 175 Pa. 101; Wade v. Oakmont Borough, 165 Pa. 479 ; Erie's App., 91 Pa. 398; Com. v. Barker, 211 Pa. 610 ; Carr v. State, 11 L. R. A. 370; Humbert v. Dunn, 84 Cal. 57 (24 Pac. Repr. 111) ; People v. Miner, 46 Ill. 384; State v. Hickman, 8 L. R. A. 403 ; Com. ex rel. v. Gregg, 161 Pa. 582.

OPINION BY MR. JUSTICE POTTER, April 22, 1907 :

This is an appeal from a judgment entered in favor of plaintiff upon a demurrer filed by defendant to the statement of claim. When the ordinance involved in the present case was under consideration by this court in Com. v. Barker, 211 Pa. 610, we held that it was a valid and sufficient appropriation of the fund in question, for the current year of its passage. Beyond that it was not then necessary to go. But now we are called upon to decide whether or not it may be regarded as a valid appropriation for future years. We can see no sound reason for exempting this appropriation from the estimate of probable expenditures for each fiscal year which, in accordance with the requirements of article 6, section 10 of the Act of May 23, 1889, P. L. 277, is to be made up and presented to councils, before the commencement of the year to be covered by the annual appropriations. The fund for distribution comes from the state, under the Act of June 28, 1895, P. L. 408 ; section 2 of which provides as follows : " On and after the first day of January, one thousand eight hundred and ninety-six, and annually thereafter, there shall be paid by the State Treasurer to the treasurers of the several cities and boroughs within the commonwealth, one half of the net amount received from the two per centum tax paid upon premiums by foreign insur-

ance companies.   The amount to be paid to each of the treasurers of the several cities and boroughs shall be based upon the return of said two per centum tax upon premiums received from foreign insurance companies doing business within the said cities and boroughs as shown by the insurance commissioner's report.   Warrants for the above purposes shall be drawn by the auditor general, payable to the treasurers of the several cities and boroughs in accordance with this act whenever there are sufficient funds in the state treasury to pay the same."

We do not find in the statute any direction, or any intimation to any municipality receiving this fund, that it is to be appropriated for the benefit of any private corporation, association or individual.   It is to be paid into the treasuries of the several municipalities, without distinction as to its use, from any other fund therein.   It may be used in the discretion of the local authorities for any lawful purpose.   No good reason is apparent, why the disposition of this fund should not be subject to the restrictions which apply to the disbursement of all public moneys.   Certainly there is nothing in the act of assembly to indicate that the plaintiff had any right to it, and its claim thereto must rest upon the action of councils through the ordinance in question.   Circumstances might arise in which this fund would be needed for the discharge of the current expenses of the city.   If so, it is certainly subject to the disposal of councils.   We feel impelled to construe the payment as one requiring the support of an annual appropriation made after consideration by councils, of the estimate of the probable receipts and expenditures for the fiscal year.

There is no foundation for the contention that the ordinance created in the plaintiff association a vested right in the fund. It was at most, merely an executory gift, subject to revocation, as long as the transfer had not actually been made.

As was pointed out in Com. v. Barker, 211 Pa. 610, the mere fact that the plaintiff association was a volunteer fire company, did not make it ineligible for the discharge of the municipal function of protecting the city from fire.   But there is a serious question as to the right of the municipality to appropriate public funds to the support of an association over which it has no control or supervision.

It appears from the history of the case that the city of Scranton became a city of the second class in April, 1901, prior to which time its fire department had been a volunteer department. It further appears that the department is now a paid or permanent department, and that when it became so the volunteer department vacated the fire houses which were owned by the city, and sold to the city all furniture, fixtures, etc., not required by the association in furnishing their club-house; and all connection with or control over the association by the city was severed. On the organization of a paid fire department the city by ordinance established a pension fund for the benefit of her firemen, under the act of 1901, and appropriated to it the funds in the hands of the city treasurer received under the act of 1895. Prior to the organization of the paid fire department every member of the volunteer force was a member of the Firemen's Relief Association, and entitled to receive benefits. No dues were assessed against him as an individual, but each company was assessed pro rata according to the number of members, which assessment was paid from the treasury of the different volunteer fire companies.

The purpose of the plaintiff corporation, as stated in its charter, was "to provide for the maintenance of a society for beneficial or protective purposes to the members from funds collected therein." The qualifications for membership were not fixed by the charter. The by-laws provided that the requisite qualifications for membership are that the beneficiary shall be or have been an active member of the fire department of the city of Scranton and a citizen of the commonwealth of Pennsylvania. There does not appear to have been any provision in either charter or by-laws giving the city any voice in or control over the management of the association.

The by-laws, of course, could be amended at any time by the action of the members, and the "beneficial or protective purposes" of the association extended to others than firemen or ex-firemen. The funds appropriated by the city could, therefore, be used for purposes other than the relief of firemen or ex-firemen, and for the benefit of persons to whom the city owed no duty other than such as was due to every citizen.

The words of Chief Justice Lowrie in Phila. Assn. v. Wood, 39 Pa. 73, with reference to a similar association, are equally

applicable here.    He said, " This is an association for charitable purposes, it is true ; but still it is strictly a private corporation. No public officer has any official knowledge of its existence, or of its members, organization or acts.    It renders no account of its proceedings or of its funds.    It is a close corporation, fixing its own terms of membership, and changing its organization but not its object, as it pleases."

There is a plain distinction in this respect between membership in a voluntary association, such as this, and that of a paid fire department, organized and controlled by the city authorities.    In the latter case the membership, the discipline and the management are subject to the regulation of the city.    The benefits can be confined to those who have actually rendered service to the city.    It is this feature only which distinguishes the payment of such a benefit from the bestowal of a gift or gratuity, which is prohibited by section 7, article IX, of the constitution.

The case of Firemen's Fund v. Roome, 93 N. Y. 313, relied upon by the court below, and by appellee, seems to be in direct conflict with our own case of Phila. Assn. v. Wood, 39 Pa. 73.    It was furthermore distinguished, and limited in its scope by the New York court of appeals, in the later case of Fox v. Humane Society, 165 N. Y. 517.    But upon the ground that the ordinance did not constitute a valid appropriation for anything more than the current year, and that it was merely an executory gift, subject to revocation at any time prior to the actual transfer, the judgment entered upon the demurrer is reversed.