516 A.2d 799

Martin E. Zern and Nancy E. Zern, his wife *v.* Charles Muldoon, Herbert Muldoon, and Phyllis Muldoon, his wife, and Borough of Palmyra and Citizens Fire Company # 1 of Palmyra. Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, Appellants.

Cynthia A. Starr *v.* Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, and Martin E. Zern and Nancy E. Zern, his wife, Citizens Fire Company # 1 of Palmyra and Borough of Palmyra. Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, Appellants.

Miller-Reist & Associates, Inc. *v.* Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, and Martin E. Zern and Nancy E. Zern, his wife, Citizens Fire Company # 1 of Palmyra and Borough of Palmyra. Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, Appellants.

Lester G. Kopp and Beatrice G. Kopp, his wife *v.* Charles Muldoon, Herbert Muldoon and Phyllis

Muldoon, his wife, and Martin E. Zern and Nancy E. Zern, his wife, Citizens Fire Company # 1 of Palmyra and Borough of Palmyra. Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, Appellants.

Carrie M. Krotser *v.* Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, and Martin E. Zern and Nancy E. Zern, his wife, Citizens Fire Company # 1 of Palmyra and Borough of Palmyra. Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, Appellants.

Ralcond Corporation *v.* Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, and Martin E. Zern and Nancy E. Zern, his wife, Citizens Fire Company # 1 of Palmyra and Borough of Palmyra. Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, Appellants.

Michael Heisey, t/d/b/a Heisey's Carpets *v.* Herbert Muldoon and Phyllis Muldoon, his wife, Charles Muldoon and Martin Zern and Nancy E. Zern, his wife; Martin Zern, Individually and as agent for Martin Zern and Nancy Zern, his wife, and The Borough of Palmyra and Citizens Fire Company # 1 of Palmyra. Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, Appellants.

Lebanon Valley National Bank, Executor of the Estate of Paul H. Nissley, Deceased *v.* Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, and Borough of Palmyra and Citizens Fire Company # 1 of Palmyra, Borough of Palmyra. Charles Muldoon, Herbert Muldoon and Phyllis Muldoon, his wife, Appellants.

Argued November 12, 1985, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Keith L. Kilgore, Spitler and Kilgore,* for appellants.

*David C. Miller, Goldberg, Evans & Katzman, P.C.,* with him, *Timothy David Sheffey, Charles Paul*

*Buchanio, F. Lee Shipman, David E. Lehman* and
*Joseph M. Farrell,* for appellees.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., October
16, 1986:

Before us are several complex appeals by a variety of
individuals and a corporate petitioner whose property
interests have been adversely affected by an extensive
fire on September 8, 1978.

The Citizens Fire Company # 1 of Palmyra was
summoned on that date to fight a fire in a building
owned by Edward Zern. The fire had started in the
kitchen of a restaurant located therein, which was oper-
ated by Charles Muldoon. When the firefighters arrived
on the scene, they observed flames in the exhaust sys-
tem of the kitchen area. The fire chief went to the base-
ment and turned off the electricity, disengaging the ex-
haust system. Other firefighters climbed to the roof and
attempted to fight the fire through a vent. These and
other efforts failed. The building suffered extensive
damage and was subsequently razed.

Eight separate lawsuits were subsequently filed in
Lebanon County Common Pleas Court in which the
Plaintiffs, the majority of whom were other tenants in
the building, sought to recover damages from Muldoon
and/or Zern. Muldoon in turn joined the fire company
as an additional defendant in each suit. The fire compa-
ny filed motions for summary judgment in which it
sought that the actions be dismissed as to it because (1)
the joinders of the fire company were prohibited by 42
Pa. C. S. §5522 for failure to give the statutorily re-
quired six months notice of a claim and (2) the suits
against it were barred by governmental immunity.[1]

---

[1] The fire company also asserted that there were no genuine
issues as to material facts present and that summary judgment be
granted on this basis. The trial court disagreed and held that dis-
putes as to certain facts existed and declined to grant summary
judgment on this basis.

In Nos. 79 T.D. 1983 through 85 T.D. 1983, the trial court granted summary judgment in favor of the fire company, concluding as a matter of law that volunteer fire companies were entitled to the common law defense of governmental immunity. In No. 86 T.D. 1983, it granted summary judgment in favor of the fire company, finding that the fire company was entitled to the six-month notice of claim against a government unit as provided in 42 Pa. C. S. §5522 and suggesting also that it would grant the motion on the grounds of governmental immunity.

Our scope of review of a trial court order granting summary judgment is limited to whether an error of law was committed or whether the trial court abused its discretion. *Nordmann v. Commonwealth,* 79 Pa. Commonwealth Ct. 187, 468 A.2d 1173 (1983).

To decide these appeals, we must define the legal relationship between volunteer fire companies and the local municipalities they serve. In pursuit thereof, we will first examine the origin and development of volunteer fire companies in this Commonwealth.

## HISTORY OF FIREFIGHTING IN THIS COMMONWEALTH

An early, exhaustive recitation of the history of firefighting in the City of Philadelphia is found in *Harmony Fire Co. v. Trustees of the Fire Association,* 35 Pa. 496 (1860). Justice READ there referred to the first laws governing fire protection which required homeowners to store two leather buckets in each dwelling so that an ample supply would be available when the primitive human "hand to hand" water chain was needed to fight a community fire. Between 1700 and 1736, the city, by then incorporated, provided the means to fight fires. It purchased its first engine in 1718. As the population surged and technology advanced, the need for a stronger firefighting force grew. An infamous fire at "Budd's

long row" in 1736 was the disaster which focused the imperative demand for a more practical, better organized system for the control of fire in this densely populated residential, commercial and industrial area. The local citizenry banded together and formed independent organizations whose unpaid members formed the first "Volunteer Fire Companies," *e.g.,* Benjamin Franklin's *Union Fire Company,* the *Hand in Hand,* the *Heart in Hand* and the *Friendship.*

These volunteer companies effectively replaced the City's early efforts to combat fires and, in 1811, the City, recognizing their contribution, began appropriating monies to the companies. The divergent companies then combined to form the "Fire Association of Philadelphia," which administratively governed disputes among the member companies and regulated their financial and equipment requirements.

The City of Philadelphia, pursuant to Section 42 of the Act Incorporating the City of Philadelphia,[2] in 1855 assumed total responsibility for fire prevention and control of volunteer fire companies by establishing and funding its Fire Department. Its officers consisted of a chief engineer, his seven assistants, and a secretary, all of whom were salaried. These officers were responsible to the City Administration for the organization and control of the volunteer fire companies which, having met certain equipment standards, were assigned fire duty in specific geographic areas. The volunteer companies, which still performed the actual firefighting duties, were funded by a conglomerate of interests *viz.* the City, insurance companies, businessmen, property owners, and the actual firefighters.

On March 15, 1871, following numerous hostile clashes among volunteer fire companies over territorial

---

[2] Act of February 2, 1854, P.L. 21, *as amended,* 53 P.S. §§16251—17096.

jurisdiction, equipment need and even political differences, the City enacted a resolution which established a permanent fully funded fire department.

Although this marked the demise of the volunteer force in Philadelphia, volunteer fire companies still maintain a strong presence to this day throughout this Commonwealth. Many of these volunteer fire companies are supported by the statutorily created relief associations,[3] which control the economic and social agenda of the companies.

The unique structural development of these volunteer fire companies presented difficult questions of law respecting funding and liability for damages caused by the discharge of their duties.

### EARLY FUNDING OF VOLUNTEER FIRE COMPANIES

To enable the City of Philadelphia to fund its newly formed fire department, foreign fire insurance companies[4] operating in that city were required by the Act of May 7, 1857, P.L. 423, to pay two percent of their annual premiums received to the Philadelphia Association for the Relief of Disabled Firemen, a state-created association[5] which aided disabled firemen, their families and persons injured by fire apparatus.

In *Philadelphia Association for Relief of Disabled Firemen v. Wood*, 39 Pa. 73 (1861), the Supreme Court declined to enforce a bond posted by a foreign insurance company pursuant to the Act when it had failed to pay the assessment. The Court doubted the constitutionality of the Act because it viewed the levy as a trans-

---

[3] The Volunteer Firemen's Relief Association Act, Act of June 11, 1968, P.L. 149, *as amended*, 53 P.S. §§8501—8508.

[4] Foreign fire insurance companies are entities incorporated in other states or foreign countries who contracted business in this Commonwealth.

[5] Act of March 25, 1835, P.L. 85.

fer of earnings from one class of men to another. The Supreme Court, in so holding, described the *relief association:*

This is an association for charitable purposes, it is true, but still it is strictly a private corporation. No public officer has any official knowledge of its existence, or of its members, organization, or acts. It renders no account of its proceedings or of its funds. It is a close corporation, fixing its own terms of membership, and changing its organization but not its object, as it pleases.

*Id.* at 82.

The legislature, in 1895, enacted a similar tax on foreign fire insurance companies. Act of June 28, 1895, P.L. 408. The tax upon gross premiums was paid to the State Treasurer who distributed the funds to the treasurers of political subdivisions. It appears that the funds were often used by municipalities to aid volunteer firefighters and their relief associations. In *Commonwealth v. Barker*, 211 Pa. 610, 61 A. 253 (1905), and *Firemen's Relief Association v. Scranton*, 217 Pa. 585, 66 A. 1103 (1907), *annual* appropriations to volunteer firefighting associations were upheld even though the entities were mostly private organizations.

In permitting limited appropriations in *Barker*, Chief Justice MITCHELL, writing for the Court, stated:

The objection that the ordinance is in violation of article IX, section 7, of the constitution prohibiting municipal appropriations for 'any corporation, association, institution or individual' is not tenable. The history and scope of that provision of the constitution are fully and clearly set forth in Com. ex rel. Police Pension Fund Assn. v. Walton, 182 Pa. 373, where it was said by the late Chief Justice STERRETT that 'no strictly legitimate municipal purpose was intended to

be prohibited,' and if councils 'were satisfied, as they doubtless were, that the distribution of the fund would be better effected through the agency of the association than by an agency of their own creation, they had a right to so provide.' This language could not have been more appropriate to the case at bar if it had been written for it. *The protection of the city from fire is a municipal function of the highest importance,* and as said in the case just cited 'a judiciously administered pension fund is doubtless a potent agency in securing the services of the most faithful and efficient class of men.' At the time of the passage of the ordinance the city had no paid fire department and the appellant association was performing that part of the city's municipal functions. *The fact that it was doing so voluntarily did not make it any the less eligible for appointment as the city's agent in that regard.*

*Barker* at 614, 61 A. at 254 (emphasis added).

### EARLY IMMUNITY OF FIRE COMPANIES

The earliest decisions treating the issue of the liability of a volunteer fire company for damages caused by its negligence are found in *Boyd v. Insurance Patrol of Philadelphia,* 113 Pa. 269, 6 A. 536 (1886) *(Boyd I),* and *Fire Insurance Patrol v. Boyd,* 120 Pa. 624, 15 A. 553 (1888) *(Boyd II).* Boyd was fatally injured when he was struck on the head by a tarpaulin dropped from a building by an employee of the Fire Insurance Patrol.[6] In *Boyd I,* the Supreme Court discussed the evolution of

---

[6] A fire insurance patrol was an organization of men who acted with suitable apparatus to save and preserve life or property at or after a fire. The men could enter burning buildings, but were explicitly ordered not to interfere with firefighters.

the doctrine of charitable immunity as it applied to volunteer organizations, but concluded that the trial court record was insufficient for it to apply the doctrine to the Fire Insurance Patrol. In *Boyd II,* the Supreme Court, after reviewing the funding appropriation and purpose of the Fire Insurance Patrol, held that it was a public charitable institution and immune from the negligence of its employees under the doctrine of charitable immunity.

However, Justice PAXSON, writing for the Court, in addressing the status of volunteer fire companies, also indicated that they would be immune under the doctrine of governmental immunity:

> Our conclusion is that the Fire Insurance Patrol of Philadelphia is a public charitable institution; that in the performance of its duties it is acting in aid and in ease of the municipal government in the preservation of life and property at fires. It remains to inquire whether the doctrine of *respondeat superior* applies to it. Upon this point we are free from doubt. It has been held in this state that the duty of extinguishing fires and saving property therefrom is a public duty, and the agent to whom such authority is delegated is a public agent and not liable for the negligence of its employees. This doctrine was affirmed by this court in Knight v. City of Philadelphia, 15 W.N. 307, where it was said: 'We think the court did not commit any error in entering judgment for the defendant upon the demurrer. The members of the fire department are not such servants of the municipal corporation as to make it liable for their acts or negligence. Their duties are of a public character, and for a high order of public benefit. The fact that this act of assembly did not make it obligatory on the

city to organize a fire department, does not change the legal liability of the municipality for the conduct of the members of the organization. The same reason which exempts the city from liability for the acts of its policemen, applies with equal force to the acts of the firemen.' And it would seem from this and other cases to make no difference as respects the legal liability, whether the organization performing such public service is a volunteer or not: Jewett v. New Haven, 38 Conn. 379; Russell v. Men of Devon, 2 T.R. 672; Feoffees of Heriot's Hospital v. Ross, 12 C.&F. 506; Riddle v. Proprietors, 7 Mass. 187; McDonald v. Hospital, 120 Mass. 432; Boyd v. Insurance Patrol, 113 Pa. 269. But I will not pursue this subject further, as there is another and higher ground upon which our decision may be placed.

*Boyd II* at 646-47, 15 A. at 556-57.

## PRESENT LEGISLATIVE AID TO VOLUNTEER FIRE COMPANIES

The legislature has also continued to aid volunteer fire companies financially and functionally. A pertinent recitation of statutory assistance to volunteer fire companies is found in *Harmony Volunteer Fire Co. v. Pennsylvania Human Relations Commission,* 73 Pa. Commonwealth Ct. 596, 602-04, 459 A.2d 439, 443 (1983), where this Court stated:

Numerous legislative enactments further interweave the functioning of the government and the fire company. Several statutes provide the fire company with particular benefits and powers: volunteer firefighters may become special fire police with full power to regulate traffic, control crowds and exercise all other police powers necessary to facilitate the fire company's

work at a fire or any other emergency; volunteer fire associations are exempt from vehicle title and registration fees; and fire companies are eligible for low interest state loans in order to purchase equipment. Other statutes also recognize the intimate relationship between a volunteer fire company and governmental entities; the borough is liable for the negligent operation of equipment by a volunteer firefighter responding to an emergency; an employer may not terminate a volunteer firefighter for missing work while responding to a fire call; firefighters are government employees under the workmen's compensation act; firefighter relief associations are entitled to receive a two percent tax on all foreign fire insurance premiums; the borough may make regulations for fire safety and may make appropriations to volunteer fire companies; the state may regulate relief companies; and the fire station is exempt from property taxes.

(Footnotes omitted.)

Moreover, the legislature has solidified the existence of volunteer fire companies by decreeing that local volunteer fire companies may not be replaced by a paid firefighting force unless a majority of the voters in the local municipality vote by referendum in favor of the change. Act of June 13, 1955, P.L. 173, *as amended,* 53 P.S. §§3831-3834.

We draw from this plethora of statutory and judicial pronouncements an important conclusion—the history, structure, organization and *public duty* of volunteer fire companies distinguish them as an entity from any other organization in existence in this Commonwealth today.

## ISSUE

From this focus point, we now turn to the question of whether volunteer fire departments are entitled to immunity for damages arising from its actions.

## DISCUSSION

In *Radobersky v. Imperial Volunteer Fire Department*, 368 Pa. 235, 81 A.2d 865 (1951), *overruled on other grounds by Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971), Justice (later, Chief Justice) JONES restated the doctrine that volunteer fire companies are immune from liability for torts committed by their servants in furtherance of their corporate purpose:

> As to the defendant's claims of immunity from liability for the torts of its servants, *the learned court below conceded that the fire company was a charity* (see Fire Insurance Patrol v. Boyd, 120 Pa. 624, 646-647, 15 A. 553; also Humane Fire Company's Appeal, 88 Pa. 389, 392; and Bethlehem Borough v. Perseverance Fire Co., 81 Pa. 445, 457) *and also an agency capable of performing a governmental function and, as such, was entitled to immunity from* liability for torts committed by its servants while acting in furtherance of the defendant's corporate purpose to 'engage in the prevention and control and extinguishment of fires in the town of Imperial, Pennsylvania, and in the surrounding vicinity.'

368 Pa. at 239, 81 A.2d at 867 (emphasis added). Our extensive review of *Radobersky* and the precedent cited therein leads us to the conclusion that volunteer fire companies, because of their distinct creation and present relationship to municipalities, presently enjoy *governmental* immunity.

This conclusion is supported by a recognition that the functions and accomplishments of volunteer fire

departments affix to their continued existence a public, *governmental* character. The extensive statutory legislation which enhances and directs the organization of volunteer fire companies demonstrates an adoption by the Commonwealth and its citizenry of the governmental characteristic of volunteer fire companies. The charitable emphasis in *Boyd I* and *Boyd II* has been replaced by the critical realization of the need for continued public protection from fire and the realization that a governmental duty can be capably performed by mostly volunteer organizations.

However, since the time *Radobersky* was decided, our Supreme Court, following the national trend, abolished the immunity doctrine as it applied to charitable organizations, *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A.2d 193 (1965),[7] local municipalities, *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973), and the Commonwealth itself, *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978).

Although the legislature responded quickly to restore immunity, with certain specific exceptions to local municipalities[8] and to the sovereign,[9] the fire that destroyed Mr. Zern's building took place during the period between the judicial and legislative action, *i.e.*, September 8, 1978.

---

[7] In *Flagiello*, the Supreme Court expressly rejected the charitable immunity doctrine as established in *Boyd I* and *Boyd II*.

[8] *See* the former Political Subdivision Tort Claims Act of November 26, 1978, P.L. 1339, *formerly* 53 P.S. §§5311.101 —5311.803. The Tort Claims Act was replaced by the 1980 Immunity Act, specifically, 42 Pa. C. S. §§8541-8564.

[9] *See* the former Sovereign Immunity Act, Act of September 28, 1978, P.L. 788, *formerly* 42 P.S. §§5110, 5111. The Sovereign Immunity Act was replaced by the 1980 Immunity Act, specifically, 42 Pa. C. S. §§8521—8528.

Therefore, we are constrained to hold that the common pleas court erred in granting summary judgment in favor of the fire departments in Nos. 79 T.D. 1983 through 85 T.D. 1983 because at the time the fire occurred, the doctrine of governmental immunity was not in existence due to the judicial decision in *Ayala,* May 23, 1973, and had not yet been revived through the November 26, 1978 Political Subdivision Tort Claims Act.

We recognize the common pleas court's able attempt to distinguish *Ayala* and create an exception to protect volunteer fire companies during the void in the governmental immunity protection. We can, however, find no appellate decisions to support the exception.

Finally, the order of the common pleas court in No. 86 T.D. 1983 is reversed. The trial court held that the volunteer fire company was entitled to the six-month notice of claim against a government unit as found in 42 Pa. C. S. §5522. However, this notice provision was not effective until sixty days past its enactment, October 5, 1980. At the time the plaintiffs' cause of action arose, September 8, 1978, the six-month statutory notice prerequisite to actions against governmental immunity applied only to *injuries to individual persons,* not property damage. Section 2 of the Act of July 9, 1976, P.L. 586, *as amended, formerly* 42 P.S. §5522.[10]

The common pleas court orders in Nos. 79 T.D. through 86 T.D. are reversed and these cases are remanded for further proceedings.

---

[10] Section 2 of the Act of September 28, 1978, P.L. 788, *as amended, formerly* 42 P.S. §5522, amended the 1976 act to require notice of *property* damage to be filed within six months of the accident. The Act of October 5, 1980, P.L. 693, repealed both the 1976 and 1978 acts and enacted the present 42 Pa. C. S. §5522.

274

ORDER

The Lebanon County Common Pleas Court orders at No. 2348 of 1979 dated June 8, 1983, and Nos. 3402 of 1978; 2373, 3273, 3274, 3275 and 3508 of 1979; and 2323 of 1980, dated June 9, 1983, are reversed. These cases are remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.