## Hatfield Township Supervisors

*Alexander Knight,* for supervisors.

*J. Harry Wagner, Jr.,* for auditors.

FORREST, J., April 11, 1956.—The Supervisors of Hatfield Township have filed this appeal from surcharges set forth in the report of two township auditors to this court for the year 1954. The representa-

tion has been made to the court that at the time of the filing of the report there were only two such auditors, instead of three as prescribed by the act of assembly. The surcharges are predicated upon (1) alleged payment of foreign fire insurance premium tax funds to firemen's relief associations existing outside of the township; (2) payments of compensation to the township supervisors for allegedly improper meetings.

An appeal by officers whose accounts are settled from the audit of township auditors to the court of common pleas is provided for by The Second Class Township Law of May 1, 1933, P. L. 103, sec. 553, as last amended by the Act of July 10, 1947, P. L. 1481, sec. 7, 53 PS §19093-553. On such appeal, ". . . the burden shall be upon each officer, whose accounts are in question, to establish the validity of the credits which he claims": The Second Class Township Law of 1933, supra, as amended, 53 PS §19093-559. The same act provides that: "After hearing, the court shall file its findings of fact and law, and enter judgment in accordance therewith . . .": 53 PS §19093-560. Accordingly, after a hearing, there are made the following:

## Findings of Fact

### Surcharge no. 1

1. On May 3, 1954, William A. Reube, Frederick A. Seiz and Robert E. Heyman, as supervisors of Hatfield Township, a Second Class Township, received $522.96 from the State Treasurer, representing a payment from the so-called foreign fire insurance premium tax fund.

2. On the same day the said supervisors, on motion, paid the same sum to the Colmar Fire Company Relief Association.

3. Colmar Fire Company is the only fire company situated in Hatfield Township.

4. Fairmount Fire Company of Lansdale and Hatfield Borough Fire Company also help put out fires in Hatfield Township.

5. Later in 1954, the supervisors received and deposited a check from the Colmar Fire Company Relief Association in the same sum. Said check was sent voluntarily, with the request that the supervisors distribute the amount thereof equally among Colmar Fire Company Relief Association, Hatfield Volunteer Fire Company Relief Association and Fairmount Fire Company Relief Association.

6. In years preceding 1954, the said supervisors had adopted a resolution recognizing all three of the aforesaid fire companies.

7. Upon receipt by the supervisors of the check from the relief association, the supervisors distributed the proceeds of the check in three payments of $174.32 each to Colmar Fire Company Relief Association, Hatfield Volunteer Fire Company Relief Association and Fairmount Fire Company Relief Association.

### Surcharge no. 2

8. The supervisors had 12 regular official public meetings in 1954 concerning which there is no dispute.

9. In addition the supervisors had one extra official public meeting concerning which there is no dispute and also three official meetings as follows: (a) On February 25, 1954, for the adoption of the budget pursuant to notice on February 5, 1954, in the North Penn Reporter. The bill for publication of this notice was approved in writing by the auditors; (b) on June 10, 1954, to observe a demonstration of certain equipment which was subsequently purchased by the supervisors; (c) on July 21, 1954, to eliminate duplication in names of streets.

10. Official minutes of all of the above-mentioned regular and extra meetings were kept.

11. Louise P. Schaeffer and Florence M. Donahy, auditors of Hatfield Township, filed their annual auditor's report for 1954, in which they made the following surcharges:

"Firemen's relief from State fire insurance tax:

All three supervisors:                    $348.64 (total)

(Fairmount Fire Company Relief
  Association, $174.32)

(Hatfield Volunteer Fire Co. Re-
  lief Association, $174.32)."

"Compensation for attendance at meetings:

William Reube          $18.00
Frederick Seiz          18.00
Robert E. Heyman        18.00."

### Discussion

The funds referred to in finding of fact no. 1 were received by the supervisors under Act of June 28, 1895, P. L. 408, sec. 2, as last amended by Act of May 26, 1949, P. L. 1825, sec. 1, 72 PS §2262, providing inter alia:

". . . there shall be paid by the State Treasurer to the treasurers of the several . . . townships, and boroughs within the Commonwealth, the entire net amount received from the two per centum tax paid upon premiums by foreign fire insurance companies. . . . Each . . . borough, town or township, receiving any payment from the State Treasurer hereunder, shall forthwith pay the amount received *to the relief fund association of . . . such fire company*, or fire companies . . . now existing, or hereafter organized, in *such . . .* borough, town, or *township*, and duly recognized as such by the council or commissioners or supervisors, as the case may be, of such . . . borough, town, or township. In any borough, town or township in which there is no fire department or fire company or

companies, the amount received by the treasurer of the borough, town or township from said tax shall be forthwith paid to the relief fund association . . . of the . . . fire company or companies of any near or adjacent . . . borough, town, or township, the fire department or fire company or companies of which afford fire protection to the inhabitants of such borough, town, or township." (Italics supplied.)

The supervisors unquestionably made the payment of the entire $522.96 to the relief fund association of the one and only duly recognized fire company existing in Hatfield Township. No exception to such action was taken by the auditors, and the first surcharge undoubtedly would not have been made if that had ended the matter. However, the fire companies of neighboring Lansdale and Hatfield Borough have willingly assisted and coöperated in putting out fires in Hatfield Township. As to certain parts of Hatfield Township they are in closer proximity than the Colmar Fire Company. Undoubtedly, for these reasons, the Colmar Fire Company Relief Association desired that the similar associations of other fire companies serving in Hatfield Township should share in the payment received from the State Treasurer.

The Colmar Relief Association might have made the payments directly to the other associations. Instead, it chose to place the fund in the hands of the supervisors of Hatfield Township for the purpose of dividing the fund into three equal parts and payment of same to the relief associations of the three fire companies serving that township. The supervisors coöperated in this procedure. Strictly speaking, this coöperation, entailing the receipt of funds from the Colmar Association and the redistribution thereof by drawing three checks, was not a function of the supervisors in their capacity as such. Neither this receipt nor the three payments were proper items in the ac-

count which was audited. The transactions were not strictly public in character. The fund delivered by the Colmar Association to the supervisors resembled a trust and was patently not intended by the legislature nor by the Colmar Association nor by the supervisors to be made available in the discretion of the local authorities for any lawful public use. In this respect the act as presently amended differs from the original act wherein the fund was to be paid into the treasuries of the several municipalities, without distinction as to its use from any other fund therein. See Firemen's Relief Assn. v. Scranton, 217 Pa. 585, 589 (1907).

Proper accounting, therefore, might dictate that the surcharge be sustained, subject, however, to the allowance of a credit in the same amount, because of the erroneous redeposit of $522.96 into the township supervisors general funds and the corresponding erroneous debit in their account. However, the need for this circuity will be obviated simply by the entry of a judgment in favor of the supervisors on surcharge no. 1. We do not intend hereby to place a stamp of approval upon an accounting practice which is manifestly improper and which should be discontinued. Nor are we expressing an opinion on the internal affairs of the Colmar Fire Company Relief Association in voluntarily relinquishing a part of its funds in favor of similar associations whose related fire companies serve the same township.

The auditors have surcharged each supervisor for compensation paid to each for the three extra or special meetings specified in finding of fact no. 9. These three meetings bring the total number of meetings for the year to 16, which is the maximum for which compensation is allowable to the supervisors under section 512 of The Second Class Township Law of May 1, 1933, P. L. 103, as amended, 53 PS §19093-512.

The act provides that: "The township supervisors shall meet for the transaction of business at least once each month, at a time and place to be fixed by the board, but they shall not be paid for more than sixteen meetings in any one year." The act does not define what is meant by "the transaction of business". However, the adoption of a budget pursuant to proper notice, which evidently was given, certainly falls within the purview of transaction of business (see The Second Class Township Law, sec. 902, as amended, 53 PS §19093-902), as does clarification of street names and elimination of duplications thereof. See The Second Class Township Law, sec. 702, as amended, 53 PS §19093-702 (XXXVII). Also, inspection of equipment proposed to be purchased is patently not only a proper but also a commendable part of the transaction of the business of the township: See Weitknecht's Appeal, 3 Lehigh 159 (1909).

Compensation was paid to the supervisors at the rate of $6 to each for each meeting which they attended. This rate was fixed by the auditors and was the maximum allowable under the provisions of section 515 of The Second Class Township Law, as amended, 53 PS §19093-515.

### Conclusions of Law

1. The credits claimed by the township supervisors for which they have been surcharged by the township auditors should be approved.

2. Judgment should be entered for the township supervisors.

### Order

And now, April 11, 1956, the prothonotary is directed to enter judgment for appellants, William A. Reube, Frederick A. Seiz and Robert E. Heyman. Costs to be paid by the Township of Hatfield.