United States Court of Appeals,

Fifth Circuit.

No. 91–8574.

Franklin YEAGER, Walter Brandt, Don C. Yeager and Mark Yeager, Plaintiffs–Appellants,

v.

CITY of McGREGOR, et al., Defendants–Appellees.

Jan. 5, 1993.

Appeal from the United States District Court for the Western District of Texas.

Before GOLDBERG, JONES, and DeMOSS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellants were voted out of membership in the McGregor, Texas Volunteer Fire Department (MVFD). Unwilling to let bygones be bygones, they sued the City of McGregor, MVFD and three individual defendants. From the district court's grant of summary judgment to the defendants, the former fire fighters have appealed. We affirm, principally because appellants did not raise a fact issue supporting their assertion that MVFD is a state actor or an agency of the City of McGregor. Where there is no state action, no section 1983 constitutional claim exists.

BACKGROUND

The MVFD has existed since the 1920's and has received subsidies from the City of McGregor. The City currently furnishes a building, two fire trucks and equipment to the volunteer program and pays each fireman a $300 yearly stipend plus a $10 contribution to a state pension program. Some City tax dollars are annually budgeted to MVFD, although its primary sources of revenue are donations and proceeds from the annual barbecue.

In 1965, the City of McGregor approved the Constitution and Bylaws of the MVFD as a voluntary unincorporated association. The undisputed affidavit evidence reflects, however, that the City exercised no day-to-day management or control of MVFD and, in particular, had no role in its membership decisions. The summary judgment evidence showed that the City does not approve MVFD's choice of Fire Chief or its Chief Engineer.

Appellants Franklin Yeager, Don Yeager, Mark Yeager and Walter Brandt were members of MVFD until December 1, 1988. In November of that year, Franklin Yeager, Don Yeager and Walter Brandt met with a newspaper reporter and alleged racial discrimination at the MVFD. They gave the reporter a copy of an ancient MVFD application form in which an applicant had to certify that he was "white male, 21 years of age and of good moral character." Appellants' allegations generated widespread media attention. On December 1, appellants complained of financial improprieties concerning MVFD funds at a McGregor City Council meeting. Appellee Tom Kirk, a member of the city council and influential local businessperson, allegedly stated after the meeting, "I want them out," indicating that he wished plaintiffs to be expelled from MVFD. (Kirk and several witnesses deny that he made this statement.) Shortly after the city council meeting, the MVFD met in special session and voted overwhelmingly by secret ballot to remove the appellants from membership. At that time, former defendant John Blake was department Chief and former defendant Ronnie Spradley was President of the MVFD.

Nearly two years later, appellants filed suit in the district court alleging that they were discharged because of their public statements concerning racial discrimination and MVFD financial irregularities. They alleged a conspiracy between Councilman Kirk and MVFD officials to deprive them of First Amendment rights. Named as defendants were the City of McGregor, the MVFD, Kirk, Blake and Spradley. After conducting substantial discovery, the appellants voluntarily dismissed the MVFD officials. The remaining defendants filed separate motions for summary judgment, which the court granted. This appeal followed.

## STANDARD OF REVIEW

In reviewing a district court's ruling on a motion for summary judgment this court applies the same standard that governs the district court. *Bache v. American Telephone & Telegraph,* 840 F.2d 283, 287 (5th Cir.), *cert. denied,* 488 U.S. 888, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988); *Brooks, Tarlton, Gilbert, Douglas and Kressler v. United States Fire Insurance Co.,* 832 F.2d 1358, 1364 (5th Cir.1987). We should therefore not affirm a summary judgment ruling unless we are "convinced, after an independent review of the record that there is no genuine issue as to any material fact and

that the movant is entitled to a judgment as a matter of law." *Brooks,* 832 F.2d at 1364. When a fact question controls the disposition of a summary judgment motion this court must "review the evidence and any inference to be drawn therein in the light most favorable to the non-moving party." *Baton Rouge Building Construction v. Jacobs Constructors,* 804 F.2d 879, 881 (5th Cir.1986) (per curiam). In contrast, we review questions of law *de novo. Kirkland v. North Side Independent School Dist.,* 890 F.2d 794, 798 (5th Cir.1989). We may affirm a summary judgment on a ground not utilized by the district court if it was raised below and has proper support in the record. *In re Jones,* 966 F.2d 169, 172 (5th Cir.1992); *Bernhardt v. Richardson–Merrell, Inc.,* 892 F.2d 440, 444 (5th Cir.1990); *Sapp v. Renfroe,* 511 F.2d 172, 175 n. 2 (5th Cir.1975).

## STATE ACTION DOCTRINE

The threshold inquiry in this section 1983 action is whether there was any intentional involvement of a state actor. *Wyatt v. Cole,* ⸺ U.S. ⸺, ⸺, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992); *Carey v. Piphus,* 435 U.S. 247, 254–57, 98 S.Ct. 1042, 1047–49, 55 L.Ed.2d 252 (1978); *Jett v. Dallas Ind. School District,* 491 U.S. 701, 731, 109 S.Ct. 2702, 2720, 105 L.Ed.2d 598 (1989). Appellants have contended that MVFD and the City are state actors responsible for their expulsion from MVFD, while councilman Kirk "conspired" with MVFD officials. For reasons to be stated, we disagree with these contentions.

A. McGregor Volunteer Fire Department

The district court "assumed without deciding" that the volunteer fire department was a state actor and proceeded to the merits of the First Amendment claims. If not corrected, this assumption might be costly to the thousands of volunteer fire departments around the country that may be needlessly exposed to section 1983 lawsuits. While the district court's reluctance to wade into an area as rife with conceptualism as the state action doctrine is understandable, that alternative is less appropriate for an appellate court. On examining the question, we demur from establishing a broad rule concerning volunteer fire departments in general; but conclude that under present Supreme Court authority, cases from this circuit and Texas law, MVFD was not a state actor.

The ultimate issue in a § 1983 case is whether the alleged infringement of federal rights

stemmed from conduct fairly attributable to the state. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 938, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). While this goal is, as Judge Goldberg has observed, "relatively well-marked," *Frazier v. Board of Trustees of Northwest Mississippi,* 765 F.2d 1278, 1283 (5th Cir.1985), the state action inquiry is inherently difficult. Judge Goldberg also wrote, "Imbued with an identity all its own, every state action inquiry partakes only slightly of the factual stuff of other cases." *Frazier,* 765 F.2d at 1284.

The Supreme Court has adopted a variety of guidelines for determining whether an individual or entity acted on behalf of the state for purposes of affixing section 1983 liability. Among the most prominent talismans of state actor status are the exclusive government function concept, the state's encouragement or coercion of private activities, the symbiotic relationship and the entanglements formula. 2 R. Rotunda, J. Nowak and J. Young, *Treatise on Constitutional Law: Substance and Procedure* § 16.2–16.4 (1986) (Supp.1991). Among these guidelines, appellants have relied solely on the "exclusive government function" standard, asserting that "a city in Texas has the responsibility for protecting its inhabitants' property against destruction by fire." Before analyzing the appellants' authorities, it is necessary to recur to the Supreme Court's explanation of the exclusive public function concept—and its limitations.

The Supreme Court rejects the notion that any entity that performs a "public function" is a state actor. The question is not "whether a private group is serving a "public function,' [but instead] whether the function performed has been "traditionally the *exclusive* prerogative of the state,' " *Rendell–Baker v. Kohn,* 457 U.S. 830, 841, 102 S.Ct. 2764, 2772–73, 73 L.Ed.2d 418 (1982) (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974)). Thus, the Court held that Massachusetts' legislative decision to educate special needs high school students at public expense "in no way makes the services the exclusive province of the State." *Id.* The private school that contracted with the state to perform this function was not transformed into a state actor. With similar reasoning, the Court foreclosed a claim that nursing homes were state actors because they operated with state subsidies under requirements that the Medicaid program imposed on the state. *Blum v. Yaretsky,* 457 U.S. 991, 1012, 102 S.Ct. 2777, 2789, 73 L.Ed.2d 534

(1982). The Court has also held that neither an extensively regulated electric utility nor a warehouseman that enforced its lien by invoking a U.C.C. self-help sale provision was engaged in an exclusive public function amounting to state action. *Jackson,* 419 U.S. at 352, 95 S.Ct. at 454; *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 160, 98 S.Ct. 1729, 1735, 56 L.Ed.2d 185 (1978).

*In dicta,* the Court once mentioned fire protection among a list of traditionally exclusive public functions including education, police protection and tax collection. *Flagg Brothers,* 436 U.S. at 163–64, 98 S.Ct. at 1737. The Court then added:

> We express no view as to the extent, if any, to which a city or state might be free to delegate to private parties the performance of such functions and thereby avoid the strictures of the Fourteenth Amendment ... [R]esolution [of such factual situations] should abide the necessity of deciding them.

*Id.* This self-qualifying reference does not decide the present case. First, the Court itself later determined in *Rendell–Baker* that a state educational function could be assigned to a private party under certain conditions without rendering the private school subject to § 1983. Second, to the extent that the reference in *Flagg Brothers* suggests that it would be impermissible to delegate an exclusive public function for the purpose of avoiding § 1983 liability, that underlying premise is absent from this case.[1] Finally, as *Flagg Brothers* states, the state action question remains fact specific even where the exclusivity of the public function is at issue. Lower courts must therefore consider the history, tradition and local law surrounding volunteer fire departments before concluding whether they are state actors.

Under a fact-specific review, the MVFD does not appear to perform a "power traditionally exclusively reserved to the state." *Jackson*, 419 U.S. at 352, 95 S.Ct. at 454. Texas law states that a home rule municipality, the form in which the City of McGregor is organized, "may *provide* for a fire department." Texas Local Government Code § 342.011 (Supp.1991) (emphasis added). This language hardly sets up fire fighting as an exclusive public function, and no Texas cases hold otherwise.

---

[1] The Court has similarly qualified *Evans. v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), as establishing a narrow, fact-specific application of the public function concept. *See Flagg Brothers,* 436 U.S. at 160 n. 8, 98 S.Ct. 1735, n. 8.

Appellants rely on two cases to support the contention that fire fighting is an exclusive public function in Texas, but neither case stands for that proposition. In one of them, the state court found that members of the Mission Volunteer Fire Department served in a governmental capacity under a now-repealed state law, Tex.Rev.Civ.Ann. art. 9205, to the extent that the worked under the supervision of paid employees of the local fire department. *Genzer v. City of Mission,* 666 S.W.2d 116, 120 (Tex.Civ.App.—Corpus Christi 1983, writ ref'd n.r.e.). The question in *Genzer* was not whether the Mission Volunteer Fire Department was acting in any kind of public function on its own, but was confined to considering whether its members participated in performing a public function for purposes of the Texas Tort Claims Act, when they served at a fireworks display under the direct supervision of the City's full-time employees. *Id.* There was no discussion of an "exclusive" public function. In the other cited case, the court decided simply not to limit a city's police power to re-zone in order to enhance fire protection. *City of McAllen v. Morris,* 217 S.W.2d 875 (Tex.Civ.App.—San Antonio, 1948, *err. ref'd*). *Morris* does state in *dicta* that "a city is one of the most ancient and familiar forms of municipal organization and it has vested in it the responsibility for protecting its inhabitants against violence and their property against destruction by fire." 217 S.W.2d at 877. The case before us deals not with an "ancient and familiar form of municipal organization" but with a home rule municipality governed by specific Texas law.

This court also takes judicial notice of the fact that there are a variety of private sector fire fighting alternatives;[2] and fire fighting is not generally an exclusive government function.[3] What is

---

[2]*See e.g.,* John A. Conway, *Firemen for Hire,* Forbes, December 22, 1980 at 8 (noting "a dozen private companies have taken over the job of fire protection in cities and towns around the country."); Dick Davies, *A City Considers Private Fire Service,* The New York Times, January 30, 1983 at p. 15, col. 1 (nothing that for 30 years, cities in the south and southwest have used private fire companies); *Rural Metro,* Business Wire, September 3, 1987 (available on Lexis) (discussing Rural Metro Corp., a private national emergency fire fighting service which operates the equivalent of 25 fire departments throughout the United States.); Carolyn Lockhead, *Taking Cities Private,* Saturday Evening Post, May 1988 at p. 30 (noting that "many Rural Metro clients maintain full or part ownership of their fire stations and equipment."); Lori Frearson, *Company Proves Privitization Works to Contain Fires, Expenses,* Arizona Business Gazette, Dec. 7, 1987 at p.23.

[3]In Colonial America all firefighting was done by private volunteers. Ron Coleman, *Opportunities in Fire Protection Services* 5 (1990). In Europe the trend continues to the present day. Lucy Holdges, *Inefficient Fire Service Should be Competitive,* The Daily Telegraph

more, only half the population of the United States is served by exclusive government fire protection.[4]

According to Martin Tolchin of the New York Times,

> "Private Fire Departments, which thrived when the nation was young, are serving a growing number of communities ... about 75 communities in 15 states ... have hired private companies to provide protection against fires ... [one company] ... protects, 20% of Arizona's population and has private fire departments in New Mexico, Texas, Florida and Tennessee."[5]

The one federal circuit court decision that held a volunteer fire department to be a state actor pre-dates *Blum* and *Rendell–Baker* and at one point suggests that it is ruling on the "symbiotic relationship test" as well as the exclusive public function concept of state action. *Janusaitis v. Middlebury Volunteer Fire Department,* 607 F.2d 17, 23 (2d Cir.1979).[6] Omitting the problems of archaism and ambiguity, however, *Janusaitis* is predicated on a state law different from that of Texas:

> The Connecticut statute authorizing agreements with volunteer fire departments implicitly recognizes that fire fighting is essentially the exclusive function of government.

607 F.2d at 24. Moreover, in Connecticut, volunteer fire fighters are considered employees of a municipality for workers compensation purposes, and a municipality is required to indemnify them for specific liabilities. 607 F.2d at 21. These distinctions are sufficient to render *Janusaitis* less than compelling precedent for the instant case.

As we reject appellants' reliance on the exclusive public function concept of state action, it is important to point out that MVFD would not have been deemed a state actor under any of the

---

(Britain) September 18, 1989 at p.4 (nothing that West Germany uses volunteer fire brigades and that in Denmark "almost half the country is served by commercial fire protection firms.")

[4]Donald DeVine, *New Look of Local Government,* The Washington Times, February 22, 1992 at B. 1 (noting "more than half the population is served by private or volunteer protection"). This is not a new trend, but a long term phenomenon. Robert Masters, *Going to Blazes* (1967) (noting that in 1967 volunteer firefighters responded to two-thirds of fires and that there were eight times more volunteers than paid firemen); Ernest Ernest, *The Volunteer Fire Company Book* 2 (1979) (noting that only 250,000 of the 2,000,000 firefighters in the United States were government employees).

[5]Martin Tolchin, *Localities Shift to Private Firefighters,* New York Times, July 28, 1985 at 22.

[6]Lower courts have been split in their reading of *Janusaitis* because of this ambiguity. *Krohnmuller v. West End Fire Company,* 123 F.R.D. 170, 174 (Ed.Pa.1988) (symbiotic relation); *Jensen v. Farrell Lines, Inc.* 625 F.2d 379, 386 (2d Cir.1980) (same); *Lombard v. Eunice Kennedy Shriver Center for Mental Retardation,* 556 F.Supp. 677, 680 (D.Mass.1983) (exclusive government function); *Wiseman v. Sherry,* 514 F.Supp. 728, 732 n. 8 (M.D.Pa.1981) (same).

Supreme Court's other formulae. These formulae all depend on the degree to which the state and the regulated entity exist in a "symbiotic relationship"[7] or under circumstances where the conduct of the private actor can be fairly imputed as that of the state. *Jackson,* 419 U.S. at 351, 95 S.Ct. at 453; *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee,* 483 U.S. 522, 556, 107 S.Ct. 2971, 2991, 97 L.Ed.2d 427 (1987).

The Fifth Circuit has been asked to interpret this group of tests in a variety of circumstances, most pertinent of which are those involving government-funded hospitals. In the hospital cases, it has been found that even when a hospital accepts substantial governmental financial support, uses facilities constructed with government guaranteed funds, and is heavily regulated and reviewed, such a relationship is "not sufficient to subject the act of that business to the restraints of the First and Fourteenth Amendments". *McCroy v. Rapides Regional Medical Center,* 635 F.Supp. 975, 980 (W.D.La.1986) *aff'd* 801 F.2d 396 (5th Cir.1986).[8] Further, the court has held that "the government's acquiescence or approval [of a private entity's actions is] insufficient to create government action." *Smith v. North Louisiana Medical Review Ass'n,* 735 F.2d 168, 173 (5th Cir.1984). Even when state law granted civil immunity to a peer review committee, the court has declined to find state action. *Goss v. Memorial Hospital System,* 789 F.2d 353 (5th Cir.1986).

The only case in which this court has found state action in a hospital setting is *A.M. Jatoi v. Hurst–Euless–Bedford Hospital Authority,* 807 F.2d 1214 (5th Cir.1987). Three factors were considered to distinguish *Jatoi* from the previous hospital cases. First, a government authority initially operated the hospital. *Jatoi,* 807 F.2d at 1221. Further, the "Authority derived a direct financial benefit from the private lessee. The Hospital Authority's repayment of bonds it issued and

---

[7]*Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

[8]*See also Greco v. Orange Memorial Hospital Corp.,* 513 F.2d 873 (5th Cir.1975), *cert. denied* 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975) (hospital that was largely funded with public bonds and whose building and lands was owned by the county was not a state actor); *Madry v. Sorel,* 558 F.2d 303 (5th Cir.1977) *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) (hospital that received financial support and whose bylaws allow public officials to serve as ex officio members was not a state actor); *Wong v. Stripling,* 881 F.2d 200 (5th Cir.1989) (no state action where private hospital was within the purview of state legislation that authorized doctor's revocation and made available option review of procedural fairness in court system).

the mortgages it entered into were dependent on successful operation of the hospital." *Id.* The court also found, significantly, that the governmental authority "retained the ability to prevent or control racial discrimination by its private manager." *Id.*[9]

This case before us more closely resembles the hospital cases in which no state action was found than it does *Jatoi.* The City's operating expense subsidy and payment of token sums to fire fighters are insufficient to develop the close nexus between the City and MVFD that would convert the voluntary association's decision into state action. Unlike *Jatoi,* the City did not profit from the existence of MVFD, never operated its own fire department, and retained no ability to control MVFD. The City was not involved in MVFD's membership policies and did not "cœrce or encourage" expulsion of appellants. *Cf. Blum,* 457 U.S. at 1004, 102 S.Ct. at 2786. Appellants have never suggested how the City's initial exercise of a right of approval over MVFD's constitution and bylaws (which did not permit the City to approve their amendments) results in continuing control of MVFD by the City. *See Rendell–Baker,* 457 U.S. at 842, 102 S.Ct. at 2772. We are confident that the connections between the City and MVFD are not so close as to establish the volunteer fire department's status as a state actor.

B. City of McGregor

Appellants assert two grounds for imposing liability on the City of McGregor for their expulsion from MVFD. First, they argue, because the City must provide fire protection for its residents, MVFD has fulfilled this exclusive prerogative of the City, and the City is liable for the constitutional torts of the MVFD. The previous discussion disposes of this contention. Second, appellants contend that under the principles of *Frazier* and *Monell,* the City can be held liable because

---

[9]Absent these factors, even if a private actor receives a state financial benefit, state action will not be found. *Fulton v. Hecht,* 545 F.2d 540 (5th Cir.1977) *cert. denied* 430 U.S. 984, 97 S.Ct. 1682, 52 L.Ed.2d 379 (finding no state action even though the state of Florida regulated and shared in the business revenues of Greyhound racing against Greyhound owners). Outside of the hospital setting, extensive regulation and review will not turn private action into state action. *McLellan v. Mississippi Power & Light Co.,* 526 F.2d 870 *vacated in part on other grounds,* 545 F.2d 919 (1977) (5th Cir.1976). Finally, absent other facts, it has been determined that if an organization is organized and incorporated under state law and receives federal and state monies, such as a private university, state action does not exist. *Blouin v. Loyola University,* 506 F.2d 20 (5th Cir.1975).

of its exercise of policymaking authority over the MVFD.

In *Frazier, supra,* one of this court's cases considering a government-funded hospital's status as a state actor, it was held that a city can be found responsible for the termination decisions made by a private association only if it exercises coercive powers or provides such significant encouragement either overt or covert that choice must in law be deemed to be that of the city. *Frazier,* 765 F.2d at 1284 (citations omitted). By contrast, the district court here found "the plaintiffs have provided absolutely no summary judgment proof that the defendant city has coerced or encouraged the MVFD's actions." The deposition excerpts and affidavits contained in the record fully support this finding. Appellees have cited nothing in the record which contradicts the district court's finding.

Appellants also seek to avail themselves of the *Monell,* principle that the City may be liable under § 1983 for an act consistent with official policy or custom or an act consistent with a custom or policy of an official to whom final and complete policy-making authority has been delegated. *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). Appellants urge that the final policy-making authority over the membership in the MVFD was delegated by the City to the MVFD. This doctrine is applicable, however, only if there is a delegation of *government powers.* Because the MVFD was a private association, the mayor, the city council, and the city manager of the City of McGregor did not hold, in the first instance, authority to regulate membership in the MVFD and therefore could not delegate that authority. Equally significant, the mayor and the city manager each executed an affidavit saying that neither they nor the city council had any connection with or exercised any influence over the vote to expel appellants from membership in the MVFD. The only link between the termination and a city official—however tenuous—was the alleged statement of Councilman Kirk. Appellants have not shown that Kirk is an authority holding discretion to hire and fire employees or that he individually holds full policy-making authority in the area of personnel matters. *Neubauer v. City of McAllen,* 766 F.2d 1567, 1574 (5th Cir.1985).

Since the City neither had policy-making authority over the MVFD nor exercised significant

overt or covert encouragement in the termination of appellants, we uphold the court's granting of summary judgment for the City of McGregor.

## COUNCILMAN KIRK

Appellants finally contend that Councilman Kirk used his position to influence the city council and certain businessmen to remove them from the MVFD. They do not allege that Kirk was a state actor in this regard but have instead relied on the presumed state actor status of John Blake and Ronnie Spradley, former officials of the MVFD, with whom Kirk allegedly conspired. Because we have determined that MVFD was not a state actor, its officers were not state actors either, and the allegations against Kirk must fall.

## SUMMARY

A private association of volunteer fire fighters chose to remove four individuals from its membership after an internecine struggle. Neither the City of McGregor nor Councilman Kirk was officially involved in this decision. Because it does not appear that Texas law renders fire fighting an exclusive public function and because none of the other hallmarks of state action are present, the district court properly granted summary judgment to appellees on appellants' § 1983 claims.

AFFIRMED.