John D. MARK

v.

**BOROUGH OF HATBORO, Enterprise Fire Company, et al.**

Civ. A. No. 92–CV–7354.

United States District Court, E.D. Pennsylvania.

June 30, 1994.

---

**968**

Robert W. Small, Berlinger & Small, Abington, PA, for John D. Mark.

Joseph J. Santarone, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Norristown, PA, for The Borough of Hatboro, Thomas E. McMackin, Charles J. Acker, Bucky L. Clark, Robert S. Doorley, Dottie Newsome, John G. Younglove, Alfred F. Zollers, Robert Stauch, Michael Barger, Roy Thomas, Joseph Reading, John Sine.

Terence P. Fenningham, Robert M. John, Schneider, Nixon & John, Hatboro, PA, for William Marley, III.

Larry D. Jackson, Harris & Silverman, Philadelphia, PA, for The Enterprise Fire Co.

## MEMORANDUM

JAMES McGIRR KELLY, District Judge.

Presently before the Court are the Motion for Summary Judgment of Defendant Enterprise Fire Company and the Motion for Summary Judgment of Defendants Borough of Hatboro, Thomas E. McMackin, Charles J. Acker, Bucky L. Clark, Robert S. Doorley, Dottie Newsome, John G. Younglove, Alfred F. Zollers, Robert Stauch, Michael Barger, Roy Thomas, Joseph Reading and John Sine. Plaintiff John D. Mark's Complaint alleges that the Borough of Hatboro and the Enterprise Fire Company violated 42 U.S.C. § 1983 by failing to adopt or follow prudent practices in admitting members to the Enterprise Fire Company. This Court has jurisdiction pursuant to 28 U.S.C. § 1343.

## BACKGROUND AND PROCEDURAL HISTORY

The facts are uncontested. This action arises out of the destruction of Mark's automobile repair business by an arson fire admittedly set by William Marley, III on March 5, 1991.[1] At the time Marley committed the arson, he was a member of the Enterprise Fire Company, a volunteer fire company operating within the Borough of Hatboro.

Mark alleges that the municipal defendants, acting under the statutory authority granted to the Borough of Hatboro ("Borough") under 53 P.S. § 46202(21), undertook to provide fire protection services through the Enterprise Fire Company ("Company"). Enterprise has been providing fire protection services to the Borough since 1890. It also has a verbal agreement with neighboring volunteer fire companies for assistance. Its members are volunteers and not employees of the Borough.[2] It receives funding through private donations and a five and one half mil fire tax subsidy from the Borough.

There is an agreement between the Company and the Borough that the Company will provide fire protection for the Borough.[3] Under this agreement, the Borough provides the Company with sufficient funds for its

---

**1.** There are four counts in the Complaint: (1) Civil rights violation pursuant to 42 U.S.C. § 1983; (2) Negligence; (3) Wilful/Wanton Misconduct; and (4) Intentional tort against Marley.

**2.** A recitation of statutory regulations concerning volunteer fire companies is found in *Harmony Volunteer Fire Co. v. Pennsylvania Human Relations Commission*, 73 Pa.Commw. 596, 602–04, 459 A.2d 439, 443 (1983). These statutes recognize that there is a relationship between governmental entities and volunteer fire companies. *Id.* For example, they allow a borough to make regulations for fire safety and to make appropriations to volunteer fire companies; they exempt the fire station from property taxes; they provide that firefighters may receive workmen's compensation. *Id.*

**3.** The most recent agreement was signed September 27, 1987.

operation and capital expenditures by the imposition of a fire tax. The Company has title to the fire station and all fire fighting equipment, and the Borough has a reversionary right to title of those capital assets in the event the Company ceases to use the fire station and equipment. Under the agreement, the Borough has no control over the Company's operations; the Borough also has no control over the membership decisions, practices, policies or standards of the Company. The Company admits new members by an affirmative vote of two-thirds of the members of the Company. Enterprise Fire Company Bylaws, Art. IV, § 2(B)(6).

The gravamen of Mark's Complaint is that, by their membership policies, the Borough and Company created or enhanced the risk to Mark of arson fire. Specifically, Mark alleges that Marley was permitted to join the Company despite a personal and psychological background that should have alerted the Company that he was a potential arsonist and, thus, unsuitable for membership in a fire company. Mark asserts that Marley would not have been permitted to join or remain in the Company but for policies and practices of the Company and Borough of not performing appropriate background examinations of either applicants or existing members. Mark contends that Marley would not have set the fire had he not been in the position of being able to fight fires. The Borough's and Company's membership policies are alleged to be willful, wanton, and deliberately indifferent to the rights and safety of Mark, because those policies and practices were adopted in the face of actual knowledge that volunteer fire companies attract arson-prone individuals.

### STANDARD OF REVIEW

Under Fed.R.Civ.P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This court is required, in resolving a motion for summary judgment pursuant to Rule 56, to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, the evidence of the nonmoving party is to be believed, and the district court must draw all reasonable inferences in the nonmovant's favor. *See id.* at 255, 106 S.Ct. at 2513–14. Furthermore, while the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact, Rule 56(c) requires the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### ENTERPRISE FIRE COMPANY'S SUMMARY JUDGMENT MOTION

In its Motion for Summary Judgment, the Company makes several arguments in support of its position that the Complaint should be dismissed as a matter of law. The Company argues that: (1) the Company did not act "under color of state law"; (2) the Fourteenth Amendment does not impose a duty upon the Company to protect individuals from the violence of non-state actors; (3) there is no constitutional requirement of psychological screening of applicants for membership in a fire company; and (4) Mark can produce no evidence of a conscious decision on the part of the Company that would represent deliberate indifference.

### 1. Requirements for a Claim under 42 U.S.C. § 1983

When a plaintiff alleges a claim under § 1983, the court must determine: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person or rights, privileges or immunities secured by the Constitution or laws of the

United States.[4] *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1987); *Moore v. Tartler*, 986 F.2d 682 (3d Cir.1993). The threshold issue in this § 1983 action is whether the Company was a state actor.[5] *Wyatt v. Cole*, — U.S. —, —, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992). I find that the issue of state action is determinative in this case, and, for the reasons that follow, that the Company did not act under color of state law.

### 2. *State Action Standard*

 The ultimate issue in a § 1983 case is whether the alleged infringement of federal rights stems from conduct fairly attributable to the state. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 938, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). This superficially simple concept has proven extremely difficult to apply in practice. *Community Medical Ctr. v. Emergency Medical Services*, 712 F.2d 878, 879 (3d Cir.1983). There is no single analysis applicable to determine the presence of state action in a § 1983 case. *Krynicky v. University of Pittsburgh*, 742 F.2d 94, 98 (3d Cir.1984), *cert. denied*, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985). However, Supreme Court jurisprudence suggests at least three relevant approaches. *Goussis v. Kimball*, 813 F.Supp. 352, 356 (E.D.Pa.1993). These include the "public function" test, which inquires into whether a private actor is engaging in activities that are the exclusive prerogative of the state, *Rendell–Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 2771–72, 73 L.Ed.2d 418 (1982); the "close nexus" test, which determines whether the state can be deemed responsible for the specific conduct of which the plaintiff complains, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453–54, 42 L.Ed.2d 477 (1974); and the "symbiotic relationship" approach, which examines the relationship between the parties to determine whether the state has "insinuated itself into a position of interdependence with [the acting party]" sufficiently to be a joint participant in the challenged activity, *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961); *see also Blum v. Yaretsky*, 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982); *Goussis*, 813 F.Supp. at 356–57.

### A. Public Function Test

The Company argues that national and local history, tradition and law indicate that firefighting in the Borough has not been an exclusive governmental function. Therefore, as a contractor performing firefighting services on a volunteer basis, the Company cannot be considered a state actor. Mark responds that the Company is a state actor because fire fighting is generally regarded as a public function, one that is traditionally the exclusive prerogative of the state. In support of his argument, he cites to dicta from a United States Supreme Court decision. The Court wrote:

> And we would be remiss if we did not note there are a number of state and municipal functions ... which have been administered with a greater degree of exclusivity by states and municipalities than has been the function of so-called dispute resolution. Among these are such functions as education, fire and police protection, and tax collection. We express no view as to the extent, if any, to which a city or State might be free to delegate to private parties the performance of such functions and thereby avoid the strictures of the Fourteenth Amendment.

---

4. 42 U.S.C. § 1983 provides, in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

5. The requirement of § 1983 that the challenged activity be "under color of state law" has been treated as identical to the "state action" element of the fourteenth amendment. *Krynicky v. University of Pittsburgh*, 742 F.2d 94, 97 (3d Cir. 1984) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929, 102 S.Ct. 2744, 2749–50, 73 L.Ed.2d 482 (1982)).

*Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 163–64, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978) (citation and footnote omitted).[6] Thus, the Supreme Court has not directly decided whether fire protection is an exclusive governmental function.

■ The Supreme Court has rejected the idea that any private entity that performs a "public function" is a state actor. *Rendell–Baker,* 457 ·U.S. at 841, 102 S.Ct. at 2771. The question is whether the function performed has been "traditionally the exclusive prerogative of the state." *Id.* at 842, 102 S.Ct. at 2775 (quoting *Jackson,* 419 U.S. at 352, 95 S.Ct. at 454). It is a factually intensive analysis, to be decided by considering all of the surrounding circumstances. *Lugar,* 457 U.S. at 939, 102 S.Ct. at 2754–55; *Braden v. University of Pittsburgh,* 477 F.2d 1, 6 (3d Cir.1973); *Kronmuller v. West End Fire Co.,* 123 F.R.D. 170, 173 (E.D.Pa.1988). The record is fully developed in this case, and the matter is ripe for the Court's determination of whether the Company is a state actor.[7]

In recent years, the Supreme Court has evaluated a number of functions delegated to private entities to determine whether the entity was performing a function that had traditionally been the exclusive prerogative of the state. The Court declined to find that an electric company providing an essential, statutorily-mandated public service was a state actor. *Jackson,* 419 U.S. at 353, 95 S.Ct. at 454–55. The Court also declined to find that a public defender was a state actor, even though he was employed and paid by the State. *Polk County v. Dodson,* 454 U.S. 312, 324, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981). Similarly, the Court found that Massachusetts' legislative decision to educate special needs high school students at public expense "in no way makes the services the exclusive province of the State." *Rendell–Baker,* 457 U.S. at 842, 102 S.Ct. at 2772. By contracting with the state of Massachusetts to educate these special needs students, a private school was not transformed into a state actor. *Id.* The Court reasoned:

> The school ... is not fundamentally different from many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships or submarines for the government. Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.

*Id.* at 840–41, 102 S.Ct. at 2766. Under a similar analysis, the Court declined to find that nursing homes operating with state subsidies, under requirements imposed by Medicaid, were state actors. *Blum v. Yaretsky,* 457 U.S. 991, 1012, 102 S.Ct. 2777, 2789–90, 73 L.Ed.2d 534 (1982).

Likewise, the Third Circuit, relying on *Rendell–Baker,* found that a contractor providing a state school bus program at state expense was not performing a function which had been "traditionally the exclusive prerogative of the State." *Black by Black v. Indiana Area School Dist.,* 985 F.2d 707, 710 (3d Cir.1992). The court wrote, "It is clear from *Rendell–Baker* that a state contractor and its employees are not state actors simply because they are carrying out a state sponsored program and the contractor is being compensated therefor by the state." *Id.*

The Third Circuit also recently concluded that the decision to withdraw the accreditation of the McKeesport Hospital's general surgery residency program by the Accredita-

---

**6.** The Court of Appeals for the Fourth Circuit discussed *Flagg Bros.* as it applies to a determination of whether fire protection is an exclusive state function:

> Despite this recognition of the important role States and municipalities play in education and other functions, the Court ruled, in *Rendell–Baker v. Kohn,* 457 U.S. 830 [102 S.Ct. 2764, 73 L.Ed.2d 418] (1982), that a private school, whose income was derived primarily from public sources and which was regulated by public authorities, was not acting under the color of state law when it discharged certain employees for their outspoken views. *Id.* at

842 [102 S.Ct. at 2771–72]. At best, the language in *Flagg Bros.* shows the Supreme Court's acknowledgment that fire protection may be an exclusive state function, but not that it must be an exclusive state function.

*Haavistola v. Community Fire Co. of Rising Sun,* 6 F.3d 211, 216 n. 1 (4th Cir.1993).

**7.** I note, however, that at least one court has held that a determination of whether a volunteer fire company is a state actor is a question for the jury. *See Haavistola,* 6 F.3d at 218. *See infra* note 9 and accompanying text.

tion Council for Graduate Medical Education ("ACGME") was not state action. *McKeesport Hosp. v. The Accreditation Council for Graduate Medical Education*, 24 F.3d 519, 520–21 (3d Cir.1994). The court held that, even if the state Board responsible for medical education was found to have delegated the accreditation responsibility to the ACGME, the evaluation and accreditation of medical education are neither traditional nor exclusive state functions. *Id.* at 525. Therefore, the court found that the ACGME was not a state actor under the public function test.

Mark claims that the United States District Court for the Eastern District of Pennsylvania has already recognized that § 1983 is applicable to fire companies. *Kronmuller v. West End Fire Co.*, 123 F.R.D. at 174. He has misstated the holding of that case. *Kronmuller* does not stand for the proposition that fire fighting is the exclusive prerogative of the state. The plaintiff in that case appealed his dismissal from the fire company to the local Borough Council, which approved and appointed all officers of the defendant fire department, had the authority to take disciplinary action against its members and heard all appeals regarding dismissal or suspensions of the firemen. *Id.* The case arose under a 12(b)(6) motion, and the court converted it to a Rule 56 motion because it considered certain matters outside the Complaint. Judge VanArtsdalen found that the plaintiff had raised genuine issues of material fact regarding whether the volunteer fire company performed an exclusively governmental function. *Id.* at 175. The Court commented:

> We need not decide whether fire fighting per se, is an activity traditionally the exclusive prerogative of the state. We do conclude, however, that whether responsibility for fire protection in Phoenixville may be delegated to the West End Fire Company

without that organization becoming a state actor at least involves questions of fact. *Id.*

Two recent Circuit cases have directly addressed the issue of whether a volunteer fire department is considered a state actor. Both Courts of Appeals engaged in a fact-intensive analysis. Each declined to establish a general rule.

The Fifth Circuit held that under present Supreme Court authority, cases from the Fifth Circuit and Texas law, the McGregor volunteer fire department did not perform a function traditionally exclusively reserved to the state and was not a state actor for purposes of a § 1983 lawsuit. *Yeager v. City of McGregor*, 980 F.2d 337, 339 (5th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993). The City of McGregor furnished a building, two trucks and equipment to its volunteer fire department. It also paid each fireman a $300 yearly stipend. The fire department was financed by tax dollars as well as private donations and fundraising events. The *Yeager* court concluded that the state action question was fact specific, and that lower courts must consider the history, tradition and local laws surrounding volunteer fire departments before concluding whether they are state actors. *Id.* at 340. The court took judicial notice of the fact that there are a variety of private sector fire fighting alternatives and that fire fighting is not generally an exclusive government function. *Id.* at 341. The court also noted that only half the population of the United States is served by exclusive government fire protection.[8] *Id.*

The Fourth Circuit took a different approach when it reviewed the district court's grant of summary judgment to the Fire Company on the grounds that it was not a state actor. *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211 (4th Cir.1993). The court held that the district court erred in concluding, as a matter of law, that the Fire Company was not a state actor under the exclusive government function theory. *Id.* at 215, 218.[9] The court reasoned

---

**8.** Donald DeVine, *New Look of Local Government*, The Washington Times, February 22, 1992 at B1.

**9.** The court affirmed the district court's determination that the Fire Company was not a state

actor under either the symbiotic relationship or governmental regulation theories. On remand, the jury found in favor of the defendant fire department on the state action issue, and the plaintiffs did not appeal. *Goldstein v. Chestnut*

that "minds could reasonably differ over the function of fire fighting organizations in the State." *Id.*

■ Neither of these two decisions is binding precedent on this Court. However, I find the *Yeager* court's reasoning more compelling. If a fully developed record is presented as it is in the case at bar, I concur with the *Yeager* court that the state action issue may be decided as a question of law.[10]

The Company has presented evidence about the history of firefighting in Pennsylvania. "[T]he history, structure, organization and *public duty* of volunteer fire companies distinguish them as an entity from any other organization in existence in this Commonwealth today." *Zern v. Muldoon*, 101 Pa.Commw. 258, 270, 516 A.2d 799, 804 (1986), *petitions for allowance of appeal granted*, 515 Pa. 586, 527 A.2d 546, 515 Pa. 591, 527 A.2d 549, *petitions for allowance of appeal denied*, 515 Pa. 596, 528 A.2d 604, 515 Pa. 591, 527 A.2d 549, and *appeal dismissed*, 518 Pa. 75, 541 A.2d 314 (1988) (emphasis in original). In Colonial America, all fire fighting was done by private volunteers. *Yeager*, 980 F.2d at 341, n. 3 (citing Ron Coleman, *Opportunities in Fire Protection Services* 5 (1990)). In Philadelphia, volunteer fire companies were formed under Benjamin Franklin's auspices after a serious fire in 1736. *Zern*, 101 Pa.Commw. at 263–64, 516 A.2d at 801. Although the City of Philadelphia eventually assumed total responsibility for fire prevention in the city, volunteer fire companies still maintain a strong presence throughout this Commonwealth. *Id.* at 265, 516 A.2d at 802. In 1986, only 49 of the Commonwealth's 2,550 fire departments were paid or partially paid units. The remaining 2,501 were all-volunteer fire companies. John Clements, *Pennsylvania Facts*, 23 (1987)

(cited in Def.'s Mem. in Supp. of Mot. for Summ.J. at 11).

The Pennsylvania statute governing fire protection, upon which Mark relies, states:

> The powers of the Borough shall be vested in the corporate authorities. Among the specific powers of the Borough shall be the following, and in the exercise of any such powers involving the enactment of any ordinance or making of any regulation, restriction, or prohibition, the Borough may provide for the enforcement thereof and may prescribe penalties for the violation thereof or for the failure to conform thereto:
>
> (21) **Fire Regulation; Fire Prevention Codes by Reference.** To make regulations within the Borough, or within such limits thereof as may be deemed proper, relative to the cause and management of fires and the prevention thereof.

53 Pa.Stat. § 46202(21) (Supp.1993). The Borough clearly is vested with the authority to promulgate regulations concerning fire fighting. On its face, however, the statute does not actually impose a duty on a borough to provide fire protection. The statute also does not give any indication as to the employment status of any fire fighting employees or the relationship of fire companies with the local government.

■ With this background information in mind, we turn to a factual analysis of the relationship between the Borough and Enterprise. The following facts, drawn from a fully developed record, indicate that Enterprise Fire Company is not a state actor: (1) the Company is an association of volunteers which has served the Borough since 1890; (2) the Borough exercises no control over the Company; (3) the Company elects its own officers, whom the Borough agrees to recognize; (4) the Borough provides no input into

---

*Ridge Volunteer Fire Co.*, 1994 WL 233356 at *1 (4th Cir. May 31, 1994).

**10.** The only other circuit court to decide this issue found that a volunteer fire department was a state actor. *Janusaitis v. Middlebury Volunteer Fire Dept.*, 607 F.2d 17, 23 (2d Cir.1979). That case is distinguishable on several grounds. First, it is a relatively old case, pre-dating *Blum v. Yaretsky* and *Rendell-Baker v. Kohn.* In addition, the state law in Connecticut authorizing agree-

ment with volunteer fire departments implicitly recognized that fire fighting was essentially the exclusive function of government in Connecticut. *Janusaitis*, 607 F.2d at 24. The Town of Middlebury also owned the land, buildings and equipment used by the defendant fire department, and the Town Board of Selectmen had the final vote of approval on the election of a Chief of the fire department. *Id.* at 21.

recruitment or training practices and is completely uninvolved with all personnel matters; (5) the Company prepares its own budget, subject to approval by the Borough; (6) the Company owns the fire station and the fire fighting equipment; and (7) the Company also gives assistance to neighboring volunteer fire companies.

Facts that could indicate a nexus between the Borough and Company are the following: (1) the Borough insures the company owned equipment and facilities and maintains insurance for the Company for personal injury or property damage; and (2) funding for the Company comes from both a fire tax mil and public donations.

I find that the facts raised by Mark are insufficient as a matter of law to create a genuine issue of material fact as to the Company's status as state actor. The facts indicate a far more tenuous connection between ·the Company and the Borough than existed in *Kronmuller*, making this case easily distinguishable. The Enterprise Fire Company is an independent contractor, operating solely with volunteer staffing, over whom the Borough has no control. By contrast, in *Kronmuller*, the Borough of Phoenixville had significant control over employment decisions in the Fire Department. It appointed all officers of the Fire Department and heard appeals of any member suspended or dismissed from the department. *Kronmuller*, 123 F.R.D. at 174.

■ There is also a more tenuous connection between the Borough and the Company than existed in *Yeager*. Unlike the Borough, the City of McGregor owned both the firehouse and the fire equipment used by the volunteer fire company. Yet, the Fifth Circuit found that, considering the facts, the history, the tradition, and local law, the McGregor fire company was not a state actor. I find that the mere fact that the Borough provides insurance for the Company is insufficient to convert the Company into a state actor.

■ The Supreme Court has held that the receipt of state funds by itself is insufficient to transform private actions into state actions. *Rendell–Baker*, 457 U.S. at 840, 102

S.Ct. at 2770–71; *Blum v. Yaretsky*, 457 U.S. at 1011, 102 S.Ct. at 2789. Similarly, the function of firefighting, a vital community service, is not transformed into state action merely because it is subsidized by the government.

The Supreme Court has also determined that such a quintessential governmental function as education can be delegated to a private entity without transforming the private entity into a state actor. *Rendell–Baker*, 457 U.S. at 842, 102 S.Ct. at 2771–72. Like the private school in *Rendell–Baker*, the Company is an independent contractor with whom the Borough has contracted to provide firefighting services. The delegation of this function does not transform the Company into a state actor.

Mark's contention that the Pennsylvania Commonwealth Court's decision in *Zern v. Muldoon* indicates that volunteer fire departments are state actors misconstrues that case. The issue in *Zern* was whether volunteer fire departments were entitled to immunity from damages. *Zern*, 101 Pa.Commw. at 271, 516 A.2d at 805. Relying on a number of Pennsylvania Supreme Court cases, the court found that members of volunteer fire departments perform a public function. *Id.* at 268, 269, 516 A.2d at 803, 804. However, that court did not find that fire fighting is an *exclusive* public function, the necessary prerequisite to state actor status. I have no doubt that fire fighting is a public function; that is not the issue. The issue is whether fire fighting is an exclusive government prerogative. Nothing in *Zern* mandates that fire fighting be considered an *exclusive* public function.

The history and tradition of the Company clearly indicate that firefighting in the Borough of Hatboro has never been a governmental function. Moreover, the Borough is not an anomaly in the Commonwealth. There is a strong tradition of volunteer firefighting in Pennsylvania. As recently as 1987, only 49 of the Commonwealth's 2,550 fire companies were paid or partially paid. Although they perform a valuable public function, they generally do so independently of the governmental unit under whose authority they are organized. *See Zern v. Mul-*

*doon,* 101 Pa.Commw. at 165, 516 A.2d at 802. Therefore, I find that the Company is not a state actor under the public function test.

## B. Symbiotic Relationship Test

Mark also contends that the Company is a state actor because of the symbiotic relationship between the Company and the Borough. Mark argues that the Borough and Company are inextricably linked together. He argues that the Company benefits financially from the tax revenues raised by the Borough to support its operation. He further contends that the Borough benefits by having fire-fighting services provided that are under-written in part by private donations and in part by the fire fighters' voluntary services.

The symbiotic relationship test originated with *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), where the Supreme Court held the Wilmington Parking Authority constitutionally accountable for racial discrimination by a lessee of the parking authority. The Court held that state action was present when:

> The State has so far insinuated itself into a position of interdependence with ... [the acting party] that it must be recognized as a joint participant in the challenged activity, which, on that account cannot be considered to have been so purely private as to fall without the scope of the Fourteenth Amendment.

*Id.* at 725, 81 S.Ct. at 862.

Several Supreme Court decisions have limited the scope of *Burton.* In *Jackson,* the Court wrote:

> We cautioned ... that while a 'multitude of relationships might appear to some to fall within the [Fourteenth] Amendment's embrace,' differences in circumstances beget differences in law, limiting the actual holding to *lessees* of public property.

*Id.,* 419 U.S. at 358, 95 S.Ct. at 457 (quoting *Burton,* 365 U.S. at 726, 81 S.Ct. at 862) (emphasis added). In 1982, several Supreme Court decisions further curtailed *Burton. See generally Krynicky v. University of Pittsburgh,* 742 F.2d at 101. In those cases, the Court found no state action under the

symbiotic relationship and clearly held that neither extensive financial assistance nor routine state regulation constitute state action. *Rendell–Baker,* 457 U.S. at 842–43, 102 S.Ct. at 2771–73; *Blum v. Yaretsky,* 457 U.S. at 1011, 102 S.Ct. at 2789.

In *Rendell–Baker v. Kohn,* the Court held that a private school that contracted to educate special needs students at public expense did not meet the symbiotic relationship test. The Court reasoned that "the school's fiscal relationship with the State is not different from that of many contractors performing services for the government. No symbiotic relationship such as existed in *Burton* exists here." *Rendell–Baker,* 457 U.S. at 843, 102 S.Ct. at 2772–73. In *Blum v. Yaretsky,* a nursing home that received 90% of its funding from the state and was subject to extensive state regulation was also held not to be a state actor under the symbiotic relationship test. *Blum,* 457 U.S. at 1011, 102 S.Ct. at 2789.

In spite of its limited scope, the Third Circuit has held that the symbiotic relationship test remains a viable analytic framework. *Krynicky,* 742 F.2d at 103. In *Krynicky,* the court found a symbiotic relationship between the Commonwealth and the University of Pittsburgh and Temple University, primarily because of the governing legislation which designated the universities as instrumentalities of the Commonwealth and state-related institutions. In addition, a percentage of university trustees were state-appointed, and the Commonwealth set tuition and fee schedules. *Id.* at 101–02. However, the Third Circuit emphasized that indicia of state involvement such as financial assistance and routine state regulation are insufficient to establish a symbiotic relationship. *Id.* at 100–01.

 Mark has clearly failed to establish that the Company is a state actor under the symbiotic relationship test. First, the Company is not a lessee of the Borough. The Company has title to the buildings and equipment, with the Borough having only a reversionary interest. Thus, under the limitation placed on the test in *Jackson,* there is no symbiotic relationship between the Borough and the Company. *See Jackson,* 419 U.S. at

358, 95 S.Ct. at 457. Furthermore, the only indicia of state involvement between the Company and the Borough were "financial assistance and routine state regulation." *Krynicky,* 742 F.2d at 100–01. Finally, unlike the state universities in *Krynicky,* the Company is self-governing and sets its own standards. *See also McKeesport v. ACGME,* 24 F.3d at 525 (no symbiotic relationship between ACGME and State board because ACGME was self-governed and financed and set standards independently).

Mark's argument that the Company is analogous to the private restaurant in *Burton* is flawed. *See Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). First, the restaurant in *Burton* was a lessee of the parking authority; as has been discussed, there is no lessor-lessee relationship between the Borough and the Company. Furthermore, in *Burton,* the state parking authority both received a direct benefit from the restaurant and had obligations and responsibilities regarding the operation of the restaurant. In the case at bar, while the Borough receives a benefit from the Company, it has no obligation or responsibility regarding the operation of the Company.

For these reasons, the Borough and Company cannot be said to be intertwined to the extent necessary to find a symbiotic relationship. The Company is not a state actor under this test.

In conclusion, I hold that the Enterprise Fire Company is not a state actor, and therefore cannot be liable under § 1983. Accordingly, I will grant summary judgment to the Company on the § 1983 claim.

## BOROUGH OF HATBORO SUMMARY JUDGMENT MOTION

### 1. Section 1983 Claim

The gravamen of Mark's Complaint against the Borough is that the Borough "exercised its fire protection power in an oppressive manner by adopting membership policies which permitted persons to join the Company who would set arson fires precisely because Company membership enable them to then participate in extinguishing those same fires." Pl.'s Mem. in Opp. to Mot. for Summ.J. at 8. This argument by Mark amounts to an assertion that, under *Monell,* the Borough may be liable under § 1983 for its failure to require the Company to screen prospective and existing members of the Company in order to determine the existence of potential arsonists. *Collins v. Harker Heights,* —— U.S. ——, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This argument rests on the premise that the Borough, having contracted with the Company to provide fire-fighting services, is nevertheless responsible for the Company.

■ A local government may be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38.

■ The Borough has contracted with the Company to provide fire protection. I have already held that, under the facts and circumstances presented, the firefighting function in the Borough is not an exclusive governmental function, and the Company is not a state actor. The Company is a private, autonomous association, and the Borough has absolutely no control over its membership screening practices. *See* Pl.'s Pretrial Mem. at 2; Dep. of Albert L. Herrman, Hatboro Borough Manager, at 20. Since it has no control over the Company's employment practices in the first place, and since the Company's acts do not fairly represent official policy, the Borough's policy or lack of policy regarding the Company's screening of new applicants is not actionable under § 1983. *See Yeager,* 980 F.2d at 343–44.

Accordingly, summary judgment will be granted to the Borough on the § 1983 claim.

### 2. State Claims

■ Because summary judgment is being granted to each defendant as to the only federal claim, this Court may decline to exercise jurisdiction over the pendant state claims. 28 U.S.C. § 1367(c)(3) (Supp.1993).

The proper forum for these issues is in the Pennsylvania state court system. The state claims will be dismissed without prejudice.